*THE PROMISSORY NOTE REPRESENTED BY THIS CERTIFICATE HAS BEEN ACQUIRED IN A TRANSACTION NOT INVOLVING ANY PUBLIC OFFERING AND HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR THE LAWS OF ANY STATE. THIS PROMISSORY NOTE MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN EXEMPTION THEREFROM UNDER SUCH ACT AND THE LAWS OF ANY APPLICABLE STATE.*

**Secured Promissory Note**

**Due November 1, 2016**

$115,000.00

June 29, 2016
Alexandria, Virginia

WHEREAS, Global Emergency Resources, LLC., a Georgia limited liability company (herein called the "Company") desires to sell to Pro-Sphere Tek, Inc. ("Pro-Sphere") or registered assigns (hereinafter called the "Payee"), and Payee desires to purchase and acquire from the Company, substantially all assets of the Company (the "Sale Transaction");

WHEREAS, the Company and Pro-Sphere have entered into an Earmark Loan Agreement dated the date of this Note (the "Loan Agreement");

WHEREAS, pursuant to the Loan Agreement, Pro-Sphere is willing to advance funds to creditors of the Company to allow the Company to continue its operations pending the consummation of the Sale Transaction;

WHEREAS, the Company and Pro-Sphere intend to enter into an asset purchase agreement in connection with the Sale Transaction;

WHEREAS, in consideration of the Company's intention to enter into the Sale Transaction, Pro-Sphere is willing to make a loan to the Company on the terms and conditions of this Note and other documents and instruments to be executed and delivered in connection with this Note;

NOW, THEREFORE, FOR VALUE RECEIVED, the Company hereby promises to pay to the order of Payee the principal sum of   ONE HUNDRED FIFTEEN THOUSAND DOLLARS ($115,000.00), together with interest from the date hereof at the rate set forth below on the principal amount from time to time remaining unpaid hereof at the Payee's address at 1101 King Street, Suite 200, Alexandria, Virginia 22301, or at such other place as the Payee may from time to time in writing designate.  Interest equal to four percent (4%) per annum, of the principal amount shall accrue from the date hereof until the date on which the full principal balance of the Note is paid.

Interest and principal shall be payable in lawful money of the United States of America, as follows:

(a)     The full outstanding balance of principal, together with interest accrued and unpaid thereon, shall be payable on the earlier of November 1, 2016 or the date on which substantially all the assets of the Company are sold (the "Maturity Date").

Company Initials: _____

Page 1 of 4



**Collateral Security**. In order to secure the due payment and performance by the Company of the principal and interest under this Note, the Company confirms and agrees that it has granted to the Payee, as secured party, a lien on Company's properties and assets, whether now owned or hereafter acquired, tangible and intangible, by the execution and delivery to the Payee of a security agreement concurrently herewith.

**Prepayment**. This Note may be prepaid by the Company in whole or in part prior to the Maturity Date. In the event of prepayment in whole, the Company shall also pay all accrued and unpaid interest at the time of such prepayment.

**Covenants**. The Company covenants that it shall execute and deliver to Pro-Sphere within seven days of the date of this Note an asset purchase agreement substantially in the form of Exhibit 1 attached hereto, provided, however, that the Company and Pro-Sphere agree to negotiate in good faith the terms of the definitive asset purchase agreement.

**Default**. For so long as all or any portion of the principal amount of this Note shall be outstanding, if any one or more of the following events shall occur for any reason whatsoever (whether such occurrence shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or other governmental body), it shall be deemed an "Event of Default" hereunder: (1) default by the Company in the due and punctual payment of the principal, interest, or both on this Note when and as the same shall become due and payable, whether at maturity or at a date fixed for prepayment or by acceleration or otherwise; (2) default by the Company in the performance or observance of any covenant in this Note or any covenant, agreement or other provision of any other instrument or document delivered to the Payee in connection with or pursuant to this Note that is not cured within a period of fifteen (15) days after written notice of such default is given to the Company, or if any such instrument or document shall terminate or become void or unenforceable other than (i) in accordance with its terms or (ii) with the Payee's prior written consent;  (3) if any representation or warranty, or any other statement of fact herein or in any writing, certificate, report or statement (including financial statement) at any time furnished to the Payee pursuant to or in connection with this Note shall be false or misleading in any material respect when made; (4) the appointment of a trustee or receiver for the Company or for a substantial part of the properties of the Company without the consent of the Company and such trustee or receiver not being discharged within sixty (60) days; (5) the institution of bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings by or against the Company remaining undismissed for a period of ninety (90) days;

If any such Event of Default shall occur, the holder of this Note may, at its option, declare this Note to be due and payable, whereupon the maturity of the then unpaid balance of this Note shall be accelerated and the same and all interest accrued thereon shall forthwith become due and payable without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding, and the holder may exercise and shall have any and all remedies accorded the holder by law.

In case any one or more Events of Default shall occur and be continuing, the holder of this Note may proceed to protect and enforce its rights or remedies either by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provisions contained in this Note or proceed to enforce the payment of this Note or any other legal, equitable or statutory right or remedy.

No right or remedy herein conferred upon the Payee is intended to be exclusive of any other right or remedy contained herein or in any instrument or document delivered in connection with or pursuant to

Company Initials:

Page 2 of 4

this Note, and every such right or remedy contained herein and therein or now or hereafter existing at law or in equity or by statute, or otherwise may be exercised separately or in any combination.

**Miscellaneous**.  Upon receipt by the Company of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Note, and (in case of loss, theft or destruction) of indemnity satisfactory to it, and upon reimbursement to the Company of all reasonable expenses incidental thereto, and upon surrender and cancellation of this Note, if mutilated, the Company will make and deliver a new Note of like tenor in the principal amount of this Note then outstanding in lieu of such Note.  Any Note so made and delivered shall be dated as of the date to which interest shall have been paid on the Note lost, stolen, destroyed or mutilated.

The terms of this Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia (but not including the choice of law rules thereof).

The Company promises to pay all reasonable costs and expenses (including without limitation attorneys' fees and disbursements) incurred in connection with the collection hereof, and to perform each and every covenant or agreement to be performed by the Company under this Note and any other instrument evidencing the obligation represented by this Note.

Any payment on this Note coming due on a Saturday, a Sunday, or a day which is a legal holiday in the place at which a payment is to be made hereunder shall be made on the next succeeding day which is a business day in such place, and any such extension of the time of payment shall be included in the computation of interest hereunder.

Each Obligor (which term shall include the Company and all makers, sureties, guarantors, endorsers, and other persons assuming obligations pursuant to this Note) under this Note hereby waives presentment, protest, demand, notice of dishonor, and all other notices, and all defenses and pleas on the grounds of any extension or extensions of the time of payments or the due dates of this Note, in whole or in part, before or after maturity, with or without notice.  No renewal or extension of this Note, no release or surrender of any collateral given as security for this Note, no release of any Obligor, and no delay in enforcement of this Note or in exercising any right or power hereunder, shall affect the liability of any Obligor.

No single or partial exercise by the Payee of any right hereunder, shall preclude any other or further exercise thereof or the exercise of any other rights.  No delay or omission on the part of the Payee in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note.

This Note and all agreements between the Company and the Payee relating hereto are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration or otherwise, shall the amount paid or agreed to be paid to the Payee for the use, forbearance or detention of money hereunder exceed the maximum amount permissible under applicable law.  If from any circumstance whatsoever fulfillment of any provision hereof, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance the Payee shall ever receive interest, or anything which might be deemed interest under applicable law, which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the reduction of the principal amount owing on account of this Note and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of this Note, such excess shall be refunded to the Company.  All sums paid or agreed to be paid to the Payee for the use, forbearance or detention of the indebtedness of the Company to the Payee shall, to the extent permitted by

Company Initials

Page 3 of 4

applicable law, be deemed to be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the actual rate of interest on account of such indebtedness is uniform throughout the term thereof.  The terms and provisions of this paragraph shall control and supersede every other provision of this Note and all other agreements between the Company and the Payee.  It is expressly represented and agreed by the Company that the proceeds of this Note are for business purposes.

Whenever used herein, the words "Company" and "Payee" and "Obligor" shall be deemed to include their respective successors and assigns.

IN WITNESS WHEREOF, Global Emergency Resources, LLC, a Georgia limited liability company, has caused this Note to be signed in its company name by its Chief Executive Officer, by authority duly given, all as of the day and year first above written.

Global Emergency Resources, LLC.

By:

Printed Name:  Stan J. Kuziar Jr.

Title: Chairman  & CEO

Company Initials:

Page 4 of 4

EXHIBIT 1

ASSET PURCHASE AGREEMENT

BETWEEN

PRO-SPHERE TEK, INC

Buyer

AND

GLOBAL EMERGENCY RESOURCES, LLC

Seller

, 2016

**EXHIBIT 1**

<u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  DEFINITIONS; INTERPRETATION. .................................................................................... 1
    (a)  Definitions ............................................................................................................................ 1
    (b)  Interpretation ........................................................................................................................ 6

2.  SALE AND PURCHASE OF ACQUIRED ASSETS; EXCLUDED ASSETS;  ASSUMPTION
OF LIABILITIES. ............................................................................................................................ 6
    (a)  Purchase and Sale of Acquired Assets ................................................................................. 6
    (b)  Excluded Assets ................................................................................................................... 7
    (c)  Assumption of Liabilities ..................................................................................................... 8
    (d)  Excluded Liabilities .............................................................................................................. 8

3.  PAYMENT ............................................................................................................................... 8
    (a)  Payment ................................................................................................................................ 8
    (b)  Breakup Fee .......................................................................................................................... 8
    (c)  Adjustments to Purchase Price ............................................... **Error! Bookmark not defined.**

4.  CLOSING; CLOSING DOCUMENTS. ..................................................................................... 9
    (a)  Closing. ................................................................................................................................. 9
    (b)  Deliveries by Seller .............................................................................................................. 9
    (c)  Deliveries by Buyer ............................................................................................................ 10

5.  REPRESENTATIONS AND WARRANTIES OF SELLER .................................................. 10
    (a)  Organization and Authority ................................................................................................ 10
    (b)  No Approvals Conflict ........................................................................................................ 11
    (c)  Litigation ............................................................................................................................ 11
    (d)  Financial Statements ........................................................................................................... 11
    e)   Title to Acquired Assets ..................................................................................................... 12
    (f)   Environmental Matters ....................................................................................................... 12
    (g)  Contracts ............................................................................................................................. 12
    (h)  Real and Personal Property Leases ..................................................................................... 12
    (i)   Real Property; Condemnation ............................................................................................. 13
    (j)   Employees Schedule ........................................................................................................... 13
    (k)  Brokers' Fees ...................................................................................................................... 13
    (l)   Accounts Receivable ........................................................................................................... 13
    (m) Patents, Trademarks, Trade Names, Etc. ............................................................................ 13
    (n)  Disclaimer of Other Representations and Warranties ......................................................... 14

6.  REPRESENTATIONS AND WARRANTIES OF BUYER .................................................. 14
    (a)  Organization and Authority ................................................................................................ 14
    (b)  No Approvals; Conflict. ...................................................................................................... 14
    (c)  Litigation ............................................................................................................................ 14
    (d)  Brokers' Fees ...................................................................................................................... 15

7.  EMPLOYEES ......................................................................................................................... 15
8.  COVENANTS ......................................................................................................................... 15


    (a)  General ................................................................................................................................ 15
    (b)  Operation ............................................................................................................................ 15

**EXHIBIT 1**

(c)  Reasonable Access .................................................................................................. 15
(d)  Notice of Developments ........................................................................................... 16
(e)  Bankruptcy Court Approval ..................................................................................... 16
(f)  Order Approving Notice Procedures ......................................................................... 16
(g)  Post-Closing Access to Records ............................................................................... 16
(h)  Access to Certain Employees ................................................... **Error! Bookmark not defined.**

9.  CONDITIONS TO CLOSING ...................................................................................... 17
(a)  Conditions to Obligation of Buyer ............................................................................ 17
(b)  Conditions to Obligation of Seller ............................................................................ 18

10.  TERMINATION .......................................................................................................... 18
(a)  Mutual Agreement .................................................................................................... 18
(b)  Adverse Development ............................................................................................... 18
(c)  Termination by Buyer ............................................................................................... 19
(d)  Termination by Seller ............................................................................................... 19
(e)  Effect of Termination ............................................................................................... 19

11.  MISCELLANEOUS ..................................................................................................... 19
a)   Survival of Representations and Warranties ............................................................... 20
(b)  Expenses and Fees .................................................................................................... 20
(c)  Transfer Taxes ......................................................................................................... 20
(d)  Waiver ..................................................................................................................... 20
(e)  Press Releases and Public Announcements ................................................................. 20
(f)  Third-Party Beneficiaries .......................................................................................... 20
(g)  Entire Agreement Amendment .................................................................................. 20
(h)  Succession and Assignment ....................................................................................... 21
(i)  Counterparts: and Facsimile Execution ...................................................................... 21
(j)  Headings .................................................................................................................. 21
(k)  Notices .................................................................................................................... 21
(l)  Governing Law; Jurisdiction ..................................................................................... 22
(m) Arbitration ............................................................................................................... 22
(n)  Confidentiality ......................................................................................................... 23
(o)  Severability .............................................................................................................. 23
(p)  Incorporation of Disclosure Letter ............................................................................ 23

**EXHIBIT 1**

## EXHIBITS

| | |
|---|---|
| <u>Exhibit A</u> | Assignment and Assumption Agreement |
| <u>Exhibit B</u> | Bill of Sale |
| <u>Exhibit C</u> | Closing Certificate of Seller |
| <u>Exhibit D</u> | Closing Certificate of Buyer |
| <u>Exhibit E</u> | Motion to Approve Sale |
| <u>Exhibit F</u> | Sale Order |
| <u>Exhibit G</u> | Bid Procedures Order |

**EXHIBIT 1**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*") is made as of                    , 2016 by and between **PRO-SPHERE TEK, INC**, a Maryland corporation ("*Buyer*"), and **GLOBAL EMERGENCY RESOURCES, LLC** a Georgia limited liability company ("*Seller*"). Buyer and Seller are sometimes referred to herein individually as a "*Party*" and together the "*Parties*."

RECITALS

A.      Seller desires to sell to Buyer, and Buyer desires to purchase and acquire from Seller, certain assets used or held for use in connection with the Business (as defined below) in accordance with and subject to the terms and conditions set forth in this Agreement.

B.      Following the execution of this Agreement, Seller plans to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (as defined below) (the "*Bankruptcy Case*") in the United States Bankruptcy Court for the Southern District of Georgia (the "*Court*").

C.      The Acquired Assets (as defined below) will be sold pursuant to the terms and conditions of this Agreement and an order of the Court approving such sale under Section 363 of the Bankruptcy Code, [and such sale will include the assumption and assignment of certain executory contracts and unexpired leases and liabilities thereunder in accordance with Section 365 of the Bankruptcy Code.]

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties agree as follows:

1.      <u>DEFINITIONS; INTERPRETATION</u>.

(a)      <u>Definitions</u>.  In addition to the terms defined elsewhere in this Agreement, the following terms shall have the respective meanings specified below:

"*AAA*" has the meaning set forth in Section 11(m).

"*Accounts Receivable*" means all rights to payment for goods sold, licensed or leased or for services rendered, all sums of money or other proceeds due or becoming due thereon and all instruments pertaining thereto.

"*Acquired Assets*" has the meaning set forth in Section 2(a) hereof.

"*Acquired Contracts*" means the contracts identified in Section 5(g) of the Disclosure Letter.

- 1 -

**EXHIBIT 1**

"*Acquired Leases*" means the real and personal property leases relating to property that is used or held for use solely or primarily in connection with the conduct of the Business identified in Section 5(h) of the Disclosure Letter.

"*Affiliate*" means, with respect to any Person; (i) a spouse or member of the immediate family of such Person; (ii) any member, manager, director, officer or partner of such Person; (iii) any corporation, partnership, business, association, limited liability company, firm or other entity of which such Person is a member, manager, director, officer or partner or owns or controls, directly or indirectly, more than fifty percent (50%) of the voting stock or other equity interests; and (iv) any other Person that directly or indirectly controls, is controlled by or is under direct or indirect common control with such first Person.

"*Assumed Liabilities*" has the meaning set forth in Section 2(c).

"*Assumption Agreement*" means that certain assignment and assumption agreement to be executed and delivered by the Parties at Closing in substantially the form of Exhibit A attached hereto.

"*Bankruptcy Case*" has the meaning set forth in the preamble to this Agreement.

"*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 1.01 et seq., as in effect on the date Seller petitions the Court as set forth in the preamble to this Agreement..

"*Bankruptcy Pleadings*" means all pleadings filed with the Court by Seller or any other Person relating to this Agreement or to Seller.

"*Bid Procedures Order*" has the meaning set forth in Section 8(f).

"*Bill of Sale*" has the meaning set forth in Section 4(b).

"*Business*" means Seller's business which consists of [*describe*].

"*Business Day*" means any day other than a Saturday, Sunday or other day on which commercial banks in Atlanta, Georgia, are authorized or required by Law to be closed.

"*Buyer's Closing Documents*" has the meaning set forth in Section 4(c).

"*Claim*" means (i) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"*Closing*" has the meaning set forth in Section 4(a).

- 2 -

EXHIBIT 1

"*Closing Date*" has the meaning set forth in Section 4(a).

"*Code*" means the Internal Revenue Code of 1986, any amendments thereto, any successor statutes and any regulations promulgated thereunder.

"*Confidential Information*" means all trade secrets and all proprietary and confidential information concerning the businesses and affairs of Seller and its Affiliates, the Acquired Assets or the Business that are not already generally available to the public.

"*Disclosure Letter*" has the meaning set forth in Section 5.

"*Effective Time*" has the meaning set forth in Section 4(a).

"*Employees*" has the meaning set forth in Section 5(j).

"*Employee Obligations*" has the meaning set forth in Section 7; provided, however that notwithstanding any provision hereunder to the contrary or any implication to the contrary set forth in Section 7 hereof, under no circumstances shall Buyer assume, or otherwise become liable for, any Severance Obligations, deferred compensation or incentive compensation plan for the benefit of any of Seller's employees, whether or not such employees become employees of Buyer, or the assets of any related trust described in Section 401 of the Code.

"*Excluded Assets*" has the meaning set forth in Section 2(b).

"*Excluded Liabilities*" has the meaning set forth in Section 2(d).

"*Executives*" has the meaning set forth in Section 8(h).

"*Final Order*" means an order which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"*Financial Statements*" means Seller's profit and loss statements for the Business for the fiscal year ended [_____] and for the [____] months ended _____, 2016, copies of which have been provided to Buyer by Seller.

"*GAAP*" means United States generally accepted accounting principles as in effect from time to time.

"*Governmental Authority*" means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United

EXHIBIT 1

States, a foreign country or any state, provincial, territorial, municipal, county, local or other governmental entity in the United States or a foreign country.

"*Governmental Permits*" means all licenses, permits, approvals, consents, certificates, waivers, exemptions, orders, registrations, certificates, variances and other authorizations from any and all Governmental Authorities, including any state sales tax numbers, used or held for use solely or primarily in connection with the conduct of the Business.

"*Intellectual Property*" means:  (a) all inventions (whether patentable or unpatentable and whether or not reduced to practice), all improvements thereto, and all patents, patent applications, and patent disclosures, together with all reissuances, continuations, continuations-in-part, revisions, extensions, and reexaminations thereof; (b) all trademarks, service marks, trade dress, logos, trade names, and corporate names, together with all translations, adaptations, derivations, and combinations thereof and including all goodwill associated therewith, and all applications, registrations, and renewals in connection therewith; (c) all computer software programs, all copyrightable works, all copyrights, and all applications, registrations, and renewals in connection therewith; (d) all mask works and all applications, registrations, and renewals in connection therewith; (e) all trade secrets and confidential business information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, and business and marketing plans and proposals); (f) all computer software (including data and related documentation); (g) all other proprietary rights; and (h) all copies and tangible embodiments thereof (in whatever form or medium).

"*Knowledge of Seller*" means the knowledge of Stanley J. Kuzia, Jr.

"*Law*" means any law, statute, regulation, rule, code, ordinance or court order enacted, adopted, issued or promulgated by any Governmental Authority.

"*Liability*" or "*Liabilities*" means any and all liabilities, obligations, judgments, damages, charges, costs, debts and indebtedness of any and every kind and nature whatsoever, absolute or contingent, liquidated or unliquidated, in Law, equity or otherwise.

"*Lien*" means, with respect to any asset or property of any character, any mortgage, pledge, security interest, lien (including any mechanics or materialmen lien, tax lien, shipper or warehousemen lien or customs lien), right of first refusal, option or other right to acquire, transfer for security, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or adverse claim of any nature pertaining to or affecting such asset or property, whether voluntary or involuntary and whether arising by Law, contract or otherwise.

"*Material Adverse Effect*" means any event, occurrence, fact, condition, change or effect that is materially adverse to the business, assets, or results of operations of the Business, taken as a whole; provided, however, that:  (i) commencement and conduct of the Bankruptcy Case

EXHIBIT 1

as referenced in and contemplated by this Agreement (excluding the effects of such actions except as specifically provided in clause (ii) following; (ii) defaults under Governmental Permits, real property leases and personal property leases including the Acquired Leases, or contracts (including the Acquired Contracts) occasioned solely by the commencement of the Bankruptcy Case; and (iii) the insufficiency of working capital of the Business occasioned by the inability to obtain additional funding shall not, individually or in the aggregate, be deemed to constitute a Material Adverse Effect.

*"Motion to Approve Sale"* has the meaning set forth in Section 8(e).

*"Ordinary Course of Business"* means the ordinary course of business of Seller consistent with Seller's past custom and practice (including with respect to quantity and frequency), taking into account the commencement of the Bankruptcy Case and the operation of the Seller as a distressed company prior to and following the commencement of the Bankruptcy Case including the occurrence of the following events: (i) defaults under Governmental Permits, real property leases and personal property leases including the Acquired Leases, or contracts (including the Acquired Contracts) occasioned solely by the commencement of the Bankruptcy Case; and (ii) the insufficiency of working capital of the Business occasioned by the inability to obtain additional funding.

*"Permitted Encumbrances"* means Liens that constitute Assumed Liabilities pursuant to the terms of this Agreement.

*"Person"* means any individual, corporation, partnership, proprietorship, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization, Governmental Authority, or other entity, organization or institution of any type whatsoever,

*"Pre-Closing Employment Claims"* has the meaning set forth in Section 7.

*"Records"* has the meaning set forth in Section 2(a).

*"Sale Order"* means an order, in substantially the form attached hereto as Exhibit F, entered by the Court approving this Agreement and the Assumption Agreement and the transactions provided for herein and therein, including approval of assignments of executory contracts and unexpired leases.

*"Seller's Closing Documents"* has the meaning set forth in Section 4(b).

*"Severance Obligations"* means, subject to the proviso set forth in the definition of "Employee Obligations," any obligation to pay severance of any kind to the Employees as a result of termination of the employment of any Employee after the Effective Time.

*"Subsidiary"* means any corporation with respect to which a specified Person (or a Subsidiary thereof) directly or indirectly, owns a majority of the common stock or has the power to vote or direct the voting of sufficient securities to elect a majority of the directors.

EXHIBIT 1

"*Transaction Documents*" means the Seller's Closing Documents and the Buyer's Closing Documents.

   (b) <u>Interpretation</u>.

Words used herein, regardless of the number and gender used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context requires and, as used herein, unless the context otherwise requires, the words "hereof," "herein," and "hereunder," and words of similar import, shall refer to this Agreement as a whole and not to any particular provision hereof. The term "including" shall be deemed to mean including, without limitations. Accounting terms used herein shall have the meanings given to them by GAAP applied on a consistent basis by the Person to which they relate. References to any Law shall be construed as a reference to the same as in effect on the date of this Agreement. Unless otherwise expressly stated, all dollar amounts stated herein are in United States currency.

   2. <u>SALE AND PURCHASE OF ACQUIRED ASSETS; EXCLUDED ASSETS; ASSUMPTION OF LIABILITIES</u>.

   (a) <u>Purchase and Sale of Acquired Assets</u>. Upon the terms and subject to the conditions of this Agreement and the Sale Order, on the Closing Date, Seller shall sell, transfer, assign, convey and deliver to Buyer, and Buyer shall purchase, accept and acquire from Seller, free and clear of any and all Liens (other than Permitted Encumbrances), all of Seller's right, title and interest as of the Effective Time in and to the properties and assets of Seller that are owned and used or held for use solely or primarily in connection with the operation of the Business, of every kind, nature, character and description, wherever located, but excluding the Excluded Assets (collectively, the "*Acquired Assets*"). By way of illustration, and not limitation, the term "Acquired Assets" includes, but is not limited to, each and all of the items in the following categories that conform to the definition of the term "Acquired Assets":

    (i) all machinery, equipment, motor vehicles, furniture, furnishings, computers, computer networks, telephone systems, replacement parts, office supplies and similar tangible property (including any of the foregoing purchased subject to any conditional sales or title retention agreement in favor of any other Person);

    (ii) all of the rights of Seller under the Acquired Contracts and the Acquired Leases for, and pertaining to, all periods from and after the Effective Time, including any right (A) to receive payment for products sold or services rendered after the Effective Time and (B) to assert claims and take other rightful actions in respect of breaches, defaults and other violations of such contracts, arrangements, licenses, leases and other agreements to the extent such violations occur following the Effective Time;

    (iii) all Intellectual Property to which the Seller has rights, except to the extent it is employed solely in connection with the Excluded Assets, goodwill associated

EXHIBIT 1

therewith, licenses and sublicenses granted and obtained with respect thereto, and rights thereunder, remedies against infringement thereto and rights to protection of interest therein under the laws of all jurisdictions, including any Intellectual Property arising after the date hereof;

(iv)    all accounts, Accounts Receivable, notes and notes receivable which are payable to Seller, all guaranties and security therefor, and all goods and services giving rise thereto and the rights pertaining to such goods and services and all related insurance with respect thereto and all security deposits and prepayments, whether or not reflected on Seller's books and records;

(v)    all books, records, operating data, manuals, customer records and data and other materials (in any form or medium) except to the extent solely relating to the Excluded Assets, including advertising matter, catalogues, price lists, correspondence, mailing lists, lists of customers, distribution lists, photographs, production data, sales and promotional materials and records, purchasing materials and records, personnel records (subject to any necessary employee consents), manufacturing and quality control records and procedures, blueprints, research and development files, records, data and laboratory books, Intellectual Property disclosures, media materials and plates, accounting records, sales order files and litigation files (collectively, "***Records***");

(vi)    to the extent their transfer is permitted by law, all Governmental Permits, including all applications therefor;

(vii)    all manufacturer warranties and similar rights in favor of Seller with respect to any Acquired Asset; and

(viii)    all capital stock or other equity interests held by the Seller including the capital stock of its Subsidiaries.

(b)    Excluded Assets.  Notwithstanding anything to the contrary contained in Section 2(a) or any other provision of this Agreement, the Acquired Assets shall not include the following properties and assets of Seller (collectively, the "***Excluded Assets***"):

(i)    all claims, causes of action, choses in action, rights of recovery, relating to accounts, notes and other receivables of Seller or its Affiliates that have accrued, arisen or been asserted against any Person or that relate to any period before the Effective Time and, all rights and powers of a trustee and debtor-in-possession against any Person whatsoever, including all avoidance powers granted to Seller under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 510, 541, 544, 545, 547 through 551 and 553 of the Bankruptcy Code;

(ii)    all rights of Seller and its Affiliates in, to and under any agreement, lease or other contract with respect to which Buyer does not assume rights or obligations hereunder or under the Assumption Agreement;

- 7 -

        (iii)     all limited liability or membership interests of Seller;

        (iv)     the articles of organization, operating agreement, qualifications to conduct business as a foreign limited liability company, taxpayer and other identification numbers, seals, minute books, membership interest transfer books, membership interest certificates, and other limited liability company documents and records relating to the organization or maintenance of the limited liability company existence of Seller;

        (v)     all assets held by or for the account of Seller or its Affiliates pursuant to the terms of any deferred compensation, incentive compensation, welfare or other employee benefit plan, or the assets of any related trust described in Section 401 of the Code;

        (vi)     all rights that accrue to Seller under this Agreement;

        (viii)   any Governmental Permit or similar right that by its terms or applicable Law is not transferable to Buyer; and

        (ix)     the assets listed on Exhibit 2(b)(x) attached hereto.

        (c)     <u>Assumption of Liabilities</u>.   As additional consideration for the Acquired Assets, Buyer agrees to assume, pay, perform and discharge only those Liabilities specified herein and in the Assumption Agreement, which shall comprise only those Liabilities under the Acquired Contracts and the Acquired Leases (but only with respect to Liabilities accruing under the Acquired Contracts and Acquired Leases from and after the Effective Time, and specifically excluding any amount owing or accrued with respect to periods prior to the Effective Time, or amounts due in respect of any breaches of Acquired Contracts or Acquired Leases occurring prior to the Effective Time) and the Employee Obligations (collectively, the "***Assumed Liabilities***").

        (d)     <u>Excluded Liabilities</u>.   Buyer shall not assume or be obligated or be responsible to pay, perform, satisfy or otherwise discharge any Liabilities whatsoever of Seller that are not specifically assumed by Buyer pursuant to this Agreement or the Assumption Agreement (collectively, the "***Excluded Liabilities***").

    3.    <u>PAYMENT</u>.

        (a)     <u>Payment</u>.   In consideration of the transfer of the Acquired Assets and the other undertakings of Seller under this Agreement, and in addition to assuming the Assumed Liabilities, at Closing Buyer will pay to Seller via wire transfer of immediately available funds to an account designated by Seller, an amount equal to $[500,000](the "***Purchase Price***").

        (b)     <u>Breakup Fee</u>.   Subject to the provisions of the Bid Procedures Order, Buyer shall be entitled to a fee in an amount equal to $75,000 (the "***Breakup Fee***"), <u>provided that</u> all of the following conditions are met:

EXHIBIT 1



(i)      Seller seeks approval of the Purchase Price and this Agreement by filing with the Court the Motion to Approve Sale, substantially in the form attached hereto as Exhibit E; and

(ii)      Seller fails to consummate the transactions contemplated under this Agreement (and Buyer is not in default under this Agreement) because either:

(A)      Seller accepts a higher or better offer for the Acquired Assets from another Person and consummates a transaction for the purchase and sale of the Acquired Assets with such Person in which Seller receives an amount equal to or greater than the Purchase Price (the "***Higher or Better Price***"); or

(B)      Seller materially breaches its obligations to Buyer under this Agreement. If Buyer is entitled to payment of the Breakup Fee pursuant to this Section 3(b), such Breakup Fee shall be delivered to Buyer within thirty (30) days after the date on which Seller receives the Higher or Better Price.

4.      <u>CLOSING; CLOSING DOCUMENTS; CLOSING CONDITIONS</u>.

(a)      <u>Closing.</u> The closing ("***Closing***") of the transactions contemplated hereby shall take place at 10:00 a.m. on [_____], 2016 (the "***Closing Date***") at the offices of _____, or such other time or such other place as may be mutually agreeable to the Parties. Closing shall be effective as of 12:01 a.m. on [_____], 2016 (the "***Effective Time***").

(b)      <u>Deliveries by Seller</u>. Subject to the fulfillment or waiver of the conditions set forth in Section 9(b), at Closing, Seller shall deliver, or cause to be delivered, to Buyer the following (the "***Seller's Closing Documents***"):

(i)      a Bill of Sale and assignment for the personal property assets to be conveyed to Buyer hereunder substantially in the form of Exhibit B attached hereto ("***Bill of Sale***");

(ii)      the Assumption Agreement;

(iii)      a certified copy of the Sale Order;

(iv)      a certificate of Seller, dated the Closing Date, substantially in the form attached hereto as Exhibit C, duly executed by Seller;

(v)      any transferable Governmental Permits assigned to Buyer;

(vi)      originals (or copies thereof if originals are not available) of all of the Acquired Contracts, Acquired Leases and Records;

**EXHIBIT 1**

(vii)   copies of certificates evidencing compliance with all applicable notice requirements under the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules governing the approval by the Court of this Agreement and the transactions contemplated hereby; and

(viii)   such other endorsements, assignments and instruments as are contemplated by this Agreement or as are reasonably deemed necessary by Buyer or Buyer's legal counsel to vest in Buyer good and valid title to the Acquired Assets (as contemplated by the Sale Order).

(c)   <u>Deliveries by Buyer</u>.  Subject to the fulfillment or waiver of the conditions set forth in Section 9(a), at Closing, Buyer shall deliver to Seller the following documents (the "***Buyer's Closing Documents***"):

(i)   the Purchase Price;

(ii)   the Assumption Agreement;

(iii)   a certificate of Buyer, dated the Closing Date, substantially in the form attached hereto as <u>Exhibit D</u> duly executed by Buyer; and

(iv)   such other instruments as are contemplated by this Agreement or as reasonably deemed necessary by Seller or Seller's legal counsel.

(d)   <u>Closing Conditions.   The obligation of the Buyer to consummate the Closing is subject to the satisfaction or waiver by the Buyer of the following conditions:</u>

(i)   <u>Stan Kuzia, Jr. shall have entered into an employment agreement with Buyer satisfactory to the Buyer in its sole discretion;</u>

(ii)   <u>[other closing conditions].</u>

5.   <u>REPRESENTATIONS AND WARRANTIES OF SELLER</u>.  Seller represents and warrants to Buyer that the statements contained in this Section 5 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date, except as set forth in the disclosure letter accompanying this Agreement and initialed by the Parties (the "***Disclosure Letter***").  The Disclosure Letter will be arranged in paragraphs corresponding to the lettered and numbered paragraphs contained in this Section 5 and Section 6 hereof.

(a)   <u>Organization and Authority</u>.  Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Georgia.  Seller has requisite limited liability company power and authority (i) to own or lease its properties and assets (including the Acquired Assets) and to carry on the Business as it is now being conducted and (ii) to enter into this Agreement and each of the Transaction Documents to be entered into by Seller and to carry out its obligations hereunder and thereunder.  The execution, delivery and

EXHIBIT 1

performance by Seller of this Agreement and of each Transaction Documents to be entered into by Seller, and the consummation by Seller of the transactions contemplated hereby and thereby, has been approved by all necessary limited liability company action on the part of Seller. This Agreement has been duly executed and delivered by Seller and upon approval of the Court will constitute the legal, valid and binding agreement of Seller, enforceable against Seller in accordance with its terms.

(b)     No Approvals; Conflict.   Except for (and subject to obtaining) the approval of the Court and any other approvals of Governmental Authorities identified in Section 5(b) of the Disclosure Letter, and except for (and subject to obtaining) any consents required in connection with the assignment to Buyer of Acquired Contracts and Acquired Leases (which consents are identified in Section 5(b) of the Disclosure Letter), the execution, delivery and performance by Seller of this Agreement and the Transaction Documents, the fulfillment of and compliance with the respective terms and provisions hereof and thereof by Seller and the consummation of the transactions contemplated hereby and thereby by Seller do not and will not: (i) require any consent, authorization or approval of or any filing or registration with any Governmental Authority or other Person; (ii) result in a breach of any material obligation; (iii) constitute a material default or an event creating rights of acceleration, termination or cancellation or a loss of material rights; or (iv) result in the creation or imposition of any material Lien upon any of the Acquired Assets, in each case under any provision of (A) the articles of organization or operating agreement of Seller, (B) any material contract, lease or agreement to which Seller is a party or (C) any Law to which Seller or any of the Acquired Assets is subject.

(c)     Litigation.   Except as set forth in Section 5(c) of the Disclosure Letter and except for the Bankruptcy Case, there is no litigation, action, lawsuit, claim, audit, review, examination, inquiry, proceeding or investigation pending or, to the Knowledge of Seller, threatened against Seller which relates to the Acquired Assets or the Business and there is no litigation, action, lawsuit, claim, audit, review, examination, inquiry, proceeding or investigation pending or, to the Knowledge of Seller, threatened, in which Seller is the plaintiff or claimant, which in either case is material to the Business or the Acquired Assets. There is no litigation, action, lawsuit, claim, audit, review, examination, inquiry, proceeding or investigation involving Seller pending or, to the Knowledge of Seller, threatened, which questions the legality or propriety of the transactions contemplated by this Agreement or any of the Transaction Documents. Except as set forth in Section 5(c) of the Disclosure Letter, there is no outstanding order, writ, injunction, or decree of any Governmental Authority against or affecting the Acquired Assets or the Business.

(d)     Financial Statements.   The Financial Statements (i) were derived from Seller's historical records relating to the Business and (ii) fairly present in all material respects the items contained thereon. The Financial Statements do not reflect the operations of any entity or business not intended to constitute a part of the Business after giving effect to the transactions contemplated by this Agreement, reflect all material costs that historically have been incurred by the Business (other than the Excluded Liabilities) and present fairly the results of operations of the Business for the periods indicated.

**EXHIBIT 1**

(e)    Title to Acquired Assets.    Except for Permitted Encumbrances or as otherwise as set forth in Section 5(e) of the Disclosure Letter, Seller has good and valid title to all of the Acquired Assets.  Upon the execution and delivery to Buyer on the Closing Date of the Bill of Sale, the Assumption Agreement and any other instruments of transfer and assignment contemplated by this Agreement, and subject to the entry of a Sale Order by the Court, Seller will transfer to Buyer good and valid title to the Acquired Assets, in each case free and clear of all Liens (other than Permitted Encumbrances).

(f)    Environmental Matters.    To the Knowledge of Seller, Seller has in the conduct of the Business, and the use of all real property subject to the Acquired Leases, complied, in all material respects, with all federal, state and local, laws, rules, regulations, judicial decisions and decrees pertaining to the use, storage, transportation or disposal of hazardous waste or toxic materials, and with respect to such real property, there are presently no material violations of federal, state and local, laws, rules, regulations, judicial decisions and decrees pertaining to the use, storage, transportation or disposal of hazardous waste or toxic materials.

(g)    Contracts.    The contracts listed in Section 5(g) of the Disclosure Letter constitute all the contracts that (i) involve payment to or receipt by the Seller or any of its Affiliates of more than $5,000 per year (other than the contracts, if any, that Buyer with full information and knowledge thereof as provided to Buyer by Seller, has elected not to assume) and the originals or true and complete copies thereof have been, or will be, as a condition precedent to Closing, provided to Buyer; (ii) any contract granting to any person or entity a right of first refusal or option to purchase or acquire any material assets; (iii) any agreement relating to the acquisition or disposition of any of the Acquired Assets; (iv) any agreement that restricts or prohibits the Seller or any of its Affiliates from engaging in any line of business or from competing with any person or entity; (v) any agreement containing "change in control" or similar provisions relating to a change in control of the Seller; (vi) any agreement included in the Purchased Assets pursuant to which the Seller is obligated to indemnify any person or entity; and (vii) any other agreement material to the Seller.  Except as set forth in Section 5(g) of the Disclosure Letter: (i) each of the Acquired Contracts is in full force and effect in all material respects; (ii) the Seller has not assigned, transferred, pledged or otherwise conveyed its rights under any Acquired Contract; and (iii) no party to any of the Acquired Contracts is in default in any material respect in the performance, observance, or fulfillment of any obligation, covenant or condition contained therein, and to the Knowledge of Seller, no event has occurred that, with or without the giving of notice or lapse of time, or both, would constitute a default thereunder in any material respect.

(h)    Real and Personal Property Leases.  The leases set forth in Section 5(h) of the Disclosure Letter hereof constitute all of the real and personal property leases that are material to the Business (other than leases, if any, that Buyer, with full information and knowledge thereof as provided to Buyer by Seller, has elected not to assume) and the originals, or true, correct and complete copies thereof have been, or will as a condition precedent to Closing, be provided by Seller to Buyer.  Except as set forth in Section 5(h) of the Disclosure Letter: (i) each of the Acquired Leases is in full force and effect in all material respects; (ii) all

EXHIBIT 1

insurance required to be maintained by Seller under each Acquired Lease is in full force and effect; (iii) the Seller has not assigned, transferred, pledged or otherwise conveyed its rights under any Acquired Lease; and (iv) no party to any of the Acquired Leases is in default in any material respect in the performance, observance or fulfillment of any obligation, covenant or condition contained therein, and to the Knowledge of Seller, no event has occurred that, with or without the giving of notice or lapse of time, or both, would constitute a default thereunder.

(i)     Real Property; Condemnation.  To the Knowledge of Seller, Seller has good and valid rights of ingress and egress to and from all real property leased under each Acquired Lease from and to the public streets for all usual street, road and utility purposes.  To the Knowledge of Seller, none of such real property is subject to any pending suit for condemnation, expropriation or other taking by any Governmental Authority (or private party acting through such Governmental Authority), and, to the Knowledge of Seller, no such condemnation or other taking is threatened.

(j)     Employees Schedule.  Section 5(j) of the Disclosure Letter sets forth a list of all current employees of Seller or its Subsidiaries working solely or primarily in the Business (the "*Employees*").  Section 5(j) of the Disclosure Letter sets forth, next to each Employee's name, the amount of unused vacation, personal or sick time accrued as of the date hereof while employed with Seller.  At Closing, Seller shall update Section 5(j) of the Disclosure Letter.  None of the Employees (x) is a party to an employment agreement with Seller or (y) is bound by a non-competition agreement in favor of Seller.

(k)     Brokers' Fees.  Seller has no liability or obligation to pay any fees or commissions to any broker or finder with respect to the transactions contemplated by this Agreement.

(l)     Accounts Receivable.  All accounts receivable included in the Purchased Assets are valid receivables arising out of and made in the ordinary course of business and represent the legal, valid and binding obligations of the obligors thereon.

(m) Patents, Trademarks, Trade Names, Etc.  Except as set forth in Section 5(m) of the Disclosure Schedule, the Seller owns or is licensed to use all patents, trade names, trademarks, copyrights and software used by the Seller.  Section 5(m) of the Disclosure Schedule contains a complete and accurate list of (i) all patents, registered trademarks, trade names, registered copyrights and material software owned or used by the Seller and all applications therefor and (ii) all material agreements relating to technology, know-how or processes which the Seller is licensed or authorized to use by others or granting to others a right to use or practice any rights under the Intellectual Property.  No claims have been asserted against Seller by any person to the ownership of or the right to use Intellectual Property or challenging or questioning the validity or effectiveness of any license or agreement with respect to the Intellectual Property; the use by the Seller of the Intellectual Property does not infringe on the rights of any person; and to the knowledge of Seller, no person is infringing upon or otherwise violating any of the Intellectual Property.

EXHIBIT 1

    (n)   <u>Disclaimer of Other Representations and Warranties</u>.  EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION 5, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, IN RESPECT OF ANY OF ITS ASSETS (INCLUDING THE ACQUIRED ASSETS), LIABILITIES OR OPERATIONS, INCLUDING WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND ANY SUCH OTHER REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED.  Buyer hereby acknowledges and agrees that, except to the extent specifically set forth in this Section 5, Buyer is purchasing the Acquired Assets on an "as-is, where-is" basis.  Without limiting the generality of the foregoing, Seller makes no representation or warranty regarding any assets other than the Acquired Assets, and none shall be implied at law or in equity.

    6.   <u>REPRESENTATIONS AND WARRANTIES OF BUYER</u>.  Buyer hereby represents and warrants to Seller that the statements contained in this Section 6 are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date, except as set forth in the Disclosure Letter.

    (a)   <u>Organization and Authority</u>.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of Maryland and is in good standing and qualified to do business in the Commonwealth of Virginia.  Buyer has requisite power and authority to enter into this Agreement and each of the Transaction Documents to be entered into by Buyer and to carry out its obligations hereunder and thereunder.  The execution, delivery and performance by Buyer of this Agreement and of each Transaction Document to be entered into by Buyer, and the consummation by Buyer of the transactions contemplated hereby and thereby, have been approved by all necessary action on the part of Buyer.  This Agreement has been duly executed and delivered by Buyer and constitutes the legal, valid and binding agreement of Buyer, enforceable against it in accordance with its terms.

    (b)   <u>No Approvals; Conflict</u>.  Except for the approval of the Court, the execution, delivery and performance by Buyer of this Agreement and the Transaction Documents, the fulfillment of and compliance with the respective terms and provisions hereof and thereof by Buyer and the consummation of the transactions contemplated hereby and thereby by Buyer do not and will not (i) require any consent, authorization or approval of or any filing or registration with any Governmental Authority or other Person, (ii) result in a breach of any material obligation, (iii) constitute a material default or an event creating rights of acceleration, termination or cancellation or a loss of material rights, or (iv) result in the creation or imposition of any material Lien upon any of the Acquired Assets, in each case under any provision of (A) the articles of incorporation or bylaws of Buyer, (B) any material contract, lease or agreement to which Buyer is a party or (C) any Law to which Buyer or any of the Acquired Assets is or are subject.

    (c)   <u>Litigation</u>. There is no litigation, action, lawsuit, claim, audit, review, examination, inquiry, proceeding or investigation involving Buyer pending or, to Buyer's knowledge, threatened, which questions the legality or propriety of the transactions contemplated by this Agreement or any of the Transaction Documents.

(d)    Brokers' Fees.  Buyer has no liability or obligation to pay any fees or commissions to any broker or finder with respect to the transactions contemplated by this Agreement for which Seller could become liable or obligated.

7.    EMPLOYEES.  On or before the Closing Date, but subject to the results of Buyer's background checks, drug testing results, and upon such terms and conditions as shall be generally consistent with those applicable to Buyer's current employees, Buyer will offer employment to all Employees specified in Section 7 of the Disclosure Letter, which shall be provided not less than 5 days prior to the Closing Date (the "Hired Employees"); provided that (i) Buyer shall give credit to the Hired Employees for years of prior service with Seller for purposes of any employee benefit plans of Buyer, and (ii) Buyer shall give credit to such Employees for any unused vacation, personal or sick time accrued with Seller, in each case subject to limitations in effect with respect to employees of Buyer.  In this regard, from and after the date of this Agreement to the Closing, Seller shall permit Buyer to conduct preliminary interviews of the Employees.  Notwithstanding any provision herein to the contrary, Buyer shall not have any liability or responsibility for any claims arising out of the employment of the Employees by Seller prior to the Effective Time or for any salary, bonuses, incentives, health care insurance and benefits, retirement benefits, pension benefits or similar employment-related payments or benefits of the Employees accruing or arising prior to the Effective Time or any Severance Obligations ("***Pre-Closing Employment Claims***").  Buyer shall assume liability and have sole responsibility for all Claims arising out of the employment of the Hired Employees by Buyer on or after the Effective Time and all vacation, benefits, salary, bonuses, incentives, health care insurance and benefits, retirement benefits, pension benefits and other similar employment-related payments or benefits of the Employees accruing or arising on or after the Effective Time (collectively the "***Employee Obligations***").

8.    COVENANTS.

(a)    General.  Each of the Parties will use its commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable in order to consummate and make effective the transactions contemplated by this Agreement, including satisfaction, but not waiver, of the closing conditions set forth in Section 9 below.

(b)    Operation.  Except as otherwise contemplated by this Agreement, Seller will not and will not cause or permit any of its Subsidiaries to engage in any practice, take any action, or enter into any transaction outside the Ordinary Course of Business, except that, subject to Section 8(g) below, Seller may take actions to sell its assets (or the Assets of its Subsidiaries) other than the Acquired Assets.

(c)    Reasonable Access.  Prior to Closing, Seller will use its commercially reasonable efforts to take all action and to do all things necessary, proper or advisable to permit representatives of Buyer to have access, at all reasonable times and in a manner so as not to interfere with the normal business operations of Seller and its Subsidiaries, to all premises, properties, personnel, books, records (including tax records), contracts, and documents of or

EXHIBIT 1

pertaining to Seller related to the Business and the Acquired Assets.  Buyer will treat and hold as such any Confidential Information it receives from Seller and its Subsidiaries in the course of the reviews contemplated by this Section 8(c), will not use any of the Confidential Information except in connection with this Agreement, and, if this Agreement is terminated for any reason whatsoever, will return to Seller all tangible embodiments (and all copies) of the Confidential Information which are in its possession.

(d)      Notice of Developments.  At any time prior to Closing, Seller shall notify Buyer of any material development relating to the Business, including any development causing a breach of any of its representations and warranties hereunder.  In addition, Seller shall, prior to Closing, supplement the Disclosure Letter hereto with respect to any matter coming to the Knowledge of Seller that, if existing or known as of the date hereof, would have been required to have been set forth or described in the Disclosure Letter.  Any such supplemental disclosure shall not be deemed to cure any breach of any representation or warranty made herein as of the date hereof, nor shall it be deemed to have been disclosed to Buyer as of the date hereof for the purposes of determining whether or not Buyer has any further obligation to consummate the transactions contemplated hereby.

(e)      Bankruptcy Court Approval.

(i)      Within twenty (20) calendar days after the date hereof, Seller shall file a motion with the Court in the form of Exhibit E (the "*Motion to Approve Sale*") seeking, among other things, the entry of the Sale Order.

(ii)      Promptly after the filing of the Motion to Approve Sale, Seller shall use reasonable efforts to obtain a hearing thereon at the earliest permission date after expiration of the applicable notice period, which notice period shall not be less than ten (10) calendar days.  Upon obtaining a hearing date, Seller shall give notice of the Motion to Approve Sale and the hearing thereon as and when required by applicable provisions of the Bankruptcy Code and orders of the Court.  Seller shall promptly deliver to Buyer copies of all such notices and shall notify Buyer of any and all objections to or Bankruptcy Pleadings relating to the Motion to Approve Sale promptly after Seller's receipt or learning thereof and provide Buyer with copies thereof.  Seller shall use reasonable efforts to obtain the prompt entry of the Sale Order.

(f)      Order Approving Notice Procedures.  Buyer and its legal counsel have read and understand the motion and order of the Bankruptcy Court approving the global bid procedures substantially in the form of Exhibit G (the "*Bid Procedures Order*").  Buyer agrees and understands this Agreement is subject to the Bid Procedures Order and any other applicable order or act of the Court.

(g)      Post-Closing Access to Records.  Following Closing, Buyer agrees to permit representatives of Seller to have access, at reasonable times and in a manner so as not to interfere with the normal business operations of Buyer and its Subsidiaries, to the books and records of Buyer (including all books and records acquired from Seller hereunder) relating to the

EXHIBIT 1

Acquired Assets or the conduct of the Business prior to the Closing Date so as to enable Seller to prepare tax, financial or court filings or reports, to respond to court orders, subpoenas or inquiries, investigations, audits or other proceedings of Governmental Authorities, to prosecute or defend legal actions or for other like proper purposes. Buyer agrees to preserve such records in its possession for a period of at least five (5) years from the Closing Date; provided that if Buyer desires to dispose of any such business records prior to the expiration of such five (5) year period, it shall, prior to such disposition, give Seller a reasonable opportunity, at Seller's expense, to remove such of the records to be disposed of as Seller may select.

      9.    <u>CONDITIONS TO CLOSING</u>.

      (a)    <u>Conditions to Obligation of Buyer</u>. The obligation of Buyer to pay the Purchase Price and to consummate the transactions to be performed by it in connection with Closing is subject to satisfaction (or written waiver by Buyer) of the following conditions:

      (i)    the representations and warranties of Seller set forth in Section 5 above shall be true and correct in all respects (in the case of any representation or warranty containing a materiality qualification) or in all material respects (in the case of an representation and warranty without any material qualification) at and as of the Closing Date;

      (ii)    Seller shall have performed and complied with all of its covenants hereunder in all material respects through Closing;

      (iii)    there shall not be any ruling, injunction, judgment, order, decree, or charge in effect preventing consummation of any of the transactions contemplated by this Agreement;

      (iv)    Seller shall have delivered to Buyer all of Seller's Closing Documents, duly executed by Seller (as applicable);

      (v)    Seller shall have satisfied all obligations to cure all defaults and to pay all amounts accrued through the Effective Time under any Acquired Contracts or Acquired Leases;

      (vi)    all actions, consents or approvals required to be obtained from Governmental Authorities or any other Person in connection with the consummation of the transactions contemplated by this Agreement or by the Transaction Documents shall have been obtained and be in full force and effect, including the Sale Order from the Court (which Sale Order shall have become a Final Order);

      (vii)    there shall not have occurred since _____, 2016 any Material Adverse Effect;

EXHIBIT 1

(viii)    the Buyer shall have received from counsel to the Seller an opinion in form and substance as set forth in Exhibit __ attached hereto, addressed to the Buyer, and dated as of the Closing Date;

(ix)    the Buyer shall have obtained on terms and conditions satisfactory to it all of the financing it needs in order to consummate the transactions contemplated hereby and fund the working capital requirements of the acquired businesses after the Closing;

(b)    Conditions to Obligation of Seller.    The obligation of Seller to consummate the transactions to be performed by it in connection with Closing is subject to satisfaction (or written waiver by Seller) of the following conditions:

(i)    the representations and warranties of Buyer set forth in Section 6 above shall be true and correct in all material respects at and as of the Closing Date;

(ii)    Buyer shall have performed and complied with all of its covenants in all material respects hereunder through Closing;

(iii)    the Purchase Price shall have been paid by Buyer via wire transfer of immediately available funds to an account designated by Seller;

(iv)    there shall not be any injunction, judgment, order, decree, ruling, or charge in effect preventing consummation of any of the transactions contemplated by this Agreement;

(v)    Buyer shall have delivered to Seller all of Buyer's Closing Documents, duly executed by Buyer (as applicable); and

(vi)    all actions, consents or approvals required to be obtained from Governmental Authorities in connection with the consummation of the transactions contemplated by this Agreement or by the Transaction Documents shall have been obtained and be in full force and effect, including the Sale Order from the Court (which Sale Order shall have become a Final Order).

10.    TERMINATION.  The Parties may terminate this Agreement as provided below.

(a)    Mutual Agreement. Buyer and Seller may terminate this Agreement by mutual written consent at any time prior to Closing.

(b)    Adverse Development.  Without prejudice to Buyer's rights pursuant to Section 10(c), Buyer may terminate this Agreement by giving written notice to Seller at any time prior to Closing in the event (i) (x) Seller has within the ten (10) Business Days prior to Buyer's notice given Buyer notice pursuant to Section 8(d) above or (y) Seller should have given such notice under Section 8(d) but failed to do so and (ii) the development that is, or should have

EXHIBIT 1

been, the subject of the notice has had or is likely, in Buyer's reasonable discretion, to have a Material Adverse Effect.

      (c)    <u>Termination by Buyer</u>.  Buyer may terminate this Agreement by giving written notice to Seller at any time prior to Closing:

      (i)    in the event Seller has breached in any material respect any representation, warranty or covenant contained in this Agreement, Buyer has notified Seller of the breach, and the breach has continued without cure for a period of five (5) Business Days after the date the notice of breach was given; or

      (ii)    if Closing shall not have occurred on or before _____, 2016, by reason of the failure of any condition precedent under Section 9(a) (unless the failure results primarily from Buyer itself breaching any representation, warranty, or covenant contained in this Agreement).

      (d)    <u>Termination by Seller</u>.  Seller may terminate this Agreement by giving written notice to Buyer at any time prior to Closing:

      (i)    in the event Buyer has breached in any material respect any representation, warranty or covenant contained in this Agreement, Seller has notified Buyer of the breach, and the breach has continued without cure for a period of five (5) Business Days after the date of the notice of breach was given;

      (ii)    if Closing shall not have occurred on or before _____, 2016 (unless the failure results primarily from Seller itself breaching any representation, warranty or covenant contained in this Agreement); or

      (iii)    by Seller, (A) if Seller receives an offer for the Acquired Assets under the terms of the Bid Procedures Order in which the purchase price in such offer exceeds the Purchase Price set forth herein by at least [__]%, plus the aggregate amount of the Breakup Fee and Expenses or (B) for any reason for which termination by Seller is authorized pursuant to the Bid Procedures Order; and

      (e)    <u>Effect of Termination</u>.  In the event of the termination of this Agreement pursuant to this Section 10, this Agreement, except for the provisions of Sections 3(b), 11(b), 11(e) and 11(l) shall forthwith become null and void and have no effect, without any liability on the part of either Party or their respective directors, officers stockholders or members.  Nothing in this Section 10 shall, however, relieve either party to this Agreement of liability for breach of this Agreement occurring prior to such termination, or for breach of any provision of this Agreement which specifically survives termination hereunder.

11.    <u>MISCELLANEOUS</u>.

**EXHIBIT 1**

(a)     <u>Survival of Representations and Warranties</u>.  None of the representations and warranties of the Parties contained in this Agreement or in any of the Transaction Documents shall survive Closing hereunder.

(b)     <u>Expenses and Fees</u>.  Each Party shall pay its own costs and expenses incident to the preparation and negotiation of this Agreement and the Transaction Documents, the consummation of the transactions contemplated hereby and thereby and its compliance with all its agreements and conditions contained herein or therein, including all legal and accounting fees and disbursements and all costs of obtaining necessary consents.

(c)     <u>Transfer Taxes</u>.  The transfer of the Acquired Assets as contemplated by this Agreement is being accomplished to further, and in contemplation of, a confirmed plan under Section 1129 of the Bankruptcy Code.  As a consequence, pursuant to Section 1146(c) of the Bankruptcy Code, such transfer of the Acquired Assets should be exempt from United States federal or state transfer Taxes, including gains, transfer, conveyance, sales, documentary stamp and similar taxes.  However, in the event such exemption is not available, Seller and Buyer shall each pay one-half of any applicable transfer Taxes.

(d)     <u>Waiver</u>.  No terms or provisions hereof, including the terms and provisions contained in this sentence, shall be waived, modified or altered so as to impose any additional obligations or liability or grant any additional right or remedy, and no custom, payment, act, knowledge, extension of time. favor or indulgence, gratuitous or otherwise, or words or silence at any time, shall impose any additional obligation or liability or grant any additional right or remedy or be deemed a waiver or release of any obligation, liability, right or remedy except as set forth in a written instrument properly executed and delivered by Seller and Buyer.  No assent, express or implied, by either party, or waiver by either party, to or of any breach of any term or provision of this Agreement or of the Schedules shall be deemed to be an assent or waiver to or of such or any succeeding breach of the same or any other such term or provision.

(e)     <u>Press Releases and Public Announcements</u>.  No party shall issue any press release or make any public announcement relating to the subject matter of this Agreement prior to entry of a Sale Order without the prior written approval of the other party; provided, however, that any party may make any public disclosure it believes in good faith is required by applicable law or any listing or trading agreement concerning its publicly-traded securities.

(f)     <u>Third-Party Beneficiaries</u>.  This Agreement shall not confer any rights or remedies upon any Person other than the parties and their respective successors and permitted assigns.

(g)     <u>Entire Agreement Amendment</u>.  This Agreement, the Exhibits and the Disclosure Letter referred to herein and the Transaction Documents contain the entire understanding of the Parties with respect to the subject matter contained herein or therein and supersede in their entirety all prior or concurrent oral or written agreements, offers, proposals and understandings between the parties with respect to such subject matter.  This Agreement

**EXHIBIT 1**

may not be amended in any respect whatsoever except by a further agreement, in writing, fully executed by each of the parties; provided, however, that this Agreement may not be amended in any material manner after entry of a Sale Order without Court approval.

(h)     Succession and Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other Party; provided, however, that Buyer may (i) assign any or all of its rights and interests hereunder to one or more of its Affiliates and (ii) designate one or more of its Affiliates to perform its obligations hereunder, in any or all of which cases Buyer nonetheless shall remain responsible for the performance of all of its obligations hereunder.  In the event Buyer assigns or delegates any of its rights hereunder as provided in the foregoing sentence, Buyer shall cause such Affiliate to be capitalized, or shall guarantee or otherwise provide financial support for the obligations of any such Affiliate to the extent such capitalization or financial support may be required in order to avoid objection to the assignment of the Acquired Contracts or Acquired Leases to such Affiliate under the provisions of Section 365 of the Bankruptcy Code.

(i)     Counterparts: and Facsimile Execution.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  The Parties may execute this Agreement and transmit such executed copy by facsimile and the recipient thereof shall be entitled to rely upon the same as if it were the original executed version thereof.

(j)     Headings.  The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(k)     Notices.  All notices, requests, demands or other communications required or permitted by this Agreement: (i) shall be in writing; (ii) shall be deemed to have been given, forwarded, made or delivered: (A) if delivered in person or by overnight courier service, when so delivered, (B) if sent by facsimile transmission, when received (provided a copy shall be sent the same day via overnight mail), or (C) if sent by registered, certified or express mail, return receipt requested and postage prepaid, on the date of receipt (or on the date of attempted delivery if delivery is refused): and (iii) shall be addressed as follows:

if to Buyer:


Phone:
Facsimile:



With a Copy To:

- 21 -

**EXHIBIT 1**

Attn:

Phone:
Facsimile:

If to Seller:

_____
_____
Attn:        _____

Phone:
Facsimile:

With a Copy To:

Each party may designate by notice in writing a new or additional address to which any notice, request, demand or communication may thereafter be so given, served or sent. Notices, requests, demands and other communications hereunder may be given by the attorney of any party.

(l)    Governing Law; Jurisdiction.    THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF, THE PARTIES ACKNOWLEDGE AND AGREE THAT THE STATE AND FEDERAL COURTS OF THE STATE OF GEORGIA, INCLUDING THE COURT, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO (OR ANY OF SELLER'S CREDITORS OR OTHER PARTIES IN INTEREST IN THE BANKRUPTCY CASE AFFECTED HEREBY) PERTAINING DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR TO ANY MATTER ARISING HEREUNDER OR RELATED HERETO.

(m)    Arbitration.    In the event the Court declines jurisdiction over any dispute concerning this Agreement, its effect, or the transactions contemplated by it, or the Court is found not to have such jurisdiction, the same shall be settled before a panel of three arbitrators in accordance with the then applicable provisions of the American Arbitration Association ("*AAA*") using the rules of procedure of the [Commonwealth of Virginia]. Each of Buyer on the one hand, and Seller on the other hand, will appoint one arbitrator, and those two arbitrators will appoint a third arbitrator.  In the event that the two arbitrators cannot agree on a third arbitrator within ten (10) days following the appointment of the second arbitrator, then the third arbitrator shall be appointed by the AAA in accordance with its then applicable rules.  If either Buyer on the one hand, or Seller on the other hand, fails to appoint an arbitrator within forty-five (45) days after written notice from one Party to the other Party detailing the dispute, the arbitrator chosen by the

**EXHIBIT 1**

Party that has chosen an arbitrator shall act as sole arbitrator. Punitive or exemplary damages shall not be permitted under any circumstances. All determinations made by a majority of the arbitrators shall be final and binding upon the Parties, with costs of arbitration to be allocated by the arbitration panel.

(n)     <u>Confidentiality</u>.  Each of Seller and Buyer agrees to maintain in strict confidence any and all information each Party learns or discovers about the other or its respective Affiliates during the course of the negotiation, execution and delivery of this Agreement and agrees to abide by the terms and conditions set forth in the Confidentiality Agreement dated [_____] by and between the Parties.

(o)     <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

(p)     <u>Incorporation of Disclosure Letter</u>.  The Disclosure Letter identified in this Agreement is incorporated herein by reference and made a part hereof.

*{balance of page intentionally left blank}*

**EXHIBIT 1**

IN WITNESS WHEREOF, intending to be legally bound hereby, the parties hereto have executed this Agreement as of the date first above written.

**GLOBAL EMERGENCY RESOURCES, LLC,** a Georgia limited liability company

By: _____

Name: _____

Title: _____

**PRO-SPHERE TEK, INC,**
a Maryland corporation

By: _____

Name: _____

Title: _____

**EXHIBIT 1**

EXHIBIT A

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "*Agreement*') is entered into as of 12:01 a.m. on [_____], 2016, by and between **GLOBAL EMERGENCY RESOURCES, LLC,** a Georgia limited liability company, ("*Assignor*"), and **PRO-SPHERE TEK, INC,** a Maryland corporation ("*Assignee*").   Capitalized terms used herein and not otherwise herein defined are used as defined in that certain Asset Purchase Agreement dated as of [_____], 2016 by and between Assignor and Assignee (the "*Purchase Agreement*").

WITNESSETH-

WHEREAS, Assignor owns and operates the Business; and

WHEREAS, in connection with the sale by Assignor to Assignee of certain assets of Assignor used in connection with the operation of the Business pursuant to the Purchase Agreement, the Parties contemplated and agreed that Assignor would assign certain contracts, leases and other obligations related to the Acquired Assets and the Business, and their rights and obligations thereunder, to Assignee; and

WHEREAS, Assignor desires to assign the Acquired Contracts and Acquired Leases, and its rights and obligations thereunder, to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants herein contained, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.       Assignment.

(a)       Assignor hereby assigns, transfers and sets over to Assignee all of Assignor's right, title and interest in and to the Acquired Contracts identified on Attachment 1 hereto, and Assignor's rights and obligations thereunder, effective as of 12:01 a.m. (Eastern Standard Time) on the Closing Date (the "*Effective Time*").

(b)       Assignor hereby assigns, transfers and sets over to Assignee all of Assignor's right, title and interest in and to the Acquired Leases identified on Attachment 2 hereto, and Assignor's rights and obligations thereunder effective as of the Effective Time.

2.       Assumption.  Assignee hereby accepts the assignments referenced in Section 1 hereof and assumes and agrees to perform the duties and obligations under the Acquired

- 25 -

EXHIBIT 1

Contracts and Acquired Leases, as fully as if Assignee were the original party thereto, accruing from and after the Effective Time.

3.     <u>Binding Effect.</u> All of the terms, provisions and conditions of this Agreement shall inure to the benefit of and be enforceable by Assignee and its respective successors and assigns,

4.     <u>Entire Agreement.</u>  This Agreement and the Purchase Agreement embody the entire agreement and understanding of the parties with respect to the subject matter herein contained, and supersede all prior agreements, correspondence, arrangements and understandings relating to the subject matter hereof.  No representation, promise, inducement or statement of intention has been made by any party which has not been embodied in this Agreement or the Purchase Agreement, and no party shall be bound by or be liable for any alleged representation, promise, inducement or statement of intention not so set forth.

5.     <u>Governing Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without regard to the conflicts of laws principles thereof.

*  *  *  *  *

{<em>signatures on following page</em>}

**EXHIBIT 1**

       IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have duly executed this Agreement as of the day and year first above written.

**ASSIGNOR:**

**GLOBAL EMERGENCY RESOURCES, LLC**

By: _____

Name: _____

Title: _____

**ASSIGNEE:**

**PRO-SPHERE TEK, INC.**

By: _____

Name: _____

Title: _____

**EXHIBIT 1**

## ATTACHMENT 1

<u>Acquired Contracts</u>

EXHIBIT 1

**ATTACHMENT 2**

<u>Acquired Leases</u>

EXHIBIT 1

EXHIBIT B

## BILL OF SALE

KNOW ALL PERSONS BY THESE PRESENTS, that **PRO-SPHERE TEK, INC.**, a Maryland corporation, has entered into an Asset Purchase Agreement dated [_____], 2016 (the "***Purchase Agreement***") with **GLOBAL EMERGENCY RESOURCES, LLC**, a Georgia limited liability company ("***Seller***"), providing, <u>inter</u> <u>alia</u>, for Seller's sale to Buyer of certain of the assets associated with Seller's Business.  Except as otherwise defined herein, all initially capitalized terms used herein shall have the same meaning as ascribed to such term in the Purchase Agreement.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller does hereby sell, transfer, convey, grant, bargain, confirm, assign and deliver to Buyer, its successors and assigns forever, effective as of the Effective Time, all right, title and interest, legal or equitable, of Seller in the Acquired Assets, including all property and assets identified on <u>Attachment 1</u> hereto, free and clear of all Liens, other than Permitted Encumbrances.

TO HAVE AND TO HOLD all of such Acquired Assets unto Buyer, its successors and assigns, forever.  Seller will execute and deliver all such further instruments of conveyance, assignment and further assurances, and shall take all such further acts as may be reasonably deemed necessary by Buyer, in order to vest, sell, transfer, convey, grant, bargain, confirm, assign and deliver to Buyer all of Seller's right, title and interest in and to such Acquired Assets.

Seller does hereby constitute and appoint Buyer, its successors and assigns, the true and lawful attorney-in-fact of Seller, with full power of substitution, in the name and stead of Seller, to demand and receive all right, title and interest in and to the Acquired Assets to which this Bill of Sale refers, and to do all other acts and things in relation thereto which Buyer, its

- 30 -

EXHIBIT 1

successors or assigns, may deem desirable, Seller hereby acknowledging that the foregoing powers are coupled with an interest and accordingly are irrevocable.

This Bill of Sale is subject to all of the terms and conditions of the Purchase Agreement. In the event of any conflict between the terms and conditions of this Bill of Sale and the terms and conditions of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control.

IN WITNESS WHEREOF, intending to be legally bound hereby, Seller has duly executed this Bill of Sale as of [_____], 2016.

**GLOBAL EMERGENCY RESOURCES, LLC**

By: _____
Name: _____
Title: _____

- 31 -

**EXHIBIT 1**

## ATTACHMENT I

Acquired Assets

EXHIBIT 1

EXHIBIT C

## **CERTIFICATE OF SELLER**

THE UNDERSIGNED, being the duly and validly elected and constituted Chief Executive Officer of **GLOBAL EMERGENCY RESOURCES, LLC**, a Georgia limited liability company ("*Seller*"), in connection with the closing of the transactions contemplated by that certain Asset Purchase Agreement, dated as of [_____], 2016 (the "*Purchase Agreement*"), by and between Seller and **PRO-SPHERE TEK, INC.**, a Maryland corporation ("*Buyer*"), does hereby certify to Buyer as follows:

1.        The representations and warranties of S made in the Purchase Agreement, including the Disclosure Letter, and in the Transaction Documents were true and correct in all material respects when made (subject to the operation of Section 7(d) of the Purchase Agreement) and are true and correct in all material respects on the Closing Date as though made on and as of the Closing Date, and Seller has performed and compiled in all material respects with the covenants and agreements required by the Purchase Agreement to be performed or complied with by Seller prior to the Closing.

2.        No documents of Seller affecting its Articles of Organization have been filed with the Secretary of State of the State of Georgia since [_____], 2016.

3.        Each of the officers of Seller named below is a duly elected incumbent in the office indicated for him. and the signature set forth opposite such person's name is the authentic signature of such person:

| **Name** | **Title** | **Signature** |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Except as otherwise defined herein, all initially capitalized terms used herein shall have the same meaning as ascribed to such term in the Purchase Agreement.

IN WITNESS WHEREOF, intending to be legally bound hereby, the undersigned has executed this Certificate as of [_____], 2016

.

_____
Stanley J. Kuzia, Jr., Chief Executive Officer of Seller

- 33 -

EXHIBIT 1

EXHIBIT D

## CERTIFICATE OF BUYER

THE UNDERSIGNED, being the duly and validly elected and constituted Secretary of **PRO-SPHERE TEK, INC.**, a Maryland corporation ("**Buyer**"), in connection with the closing of the transactions contemplated by that certain Asset Purchase Agreement, dated as of [_____], 2016 (the "**Purchase Agreement**"), by and between Buyer and **GLOBAL EMERGENCY RESOURCES, LLC**, a Georgia limited liability company ("**Seller**"), does hereby certify as follows:

1.      The representations and warranties of Buyer made in the Purchase Agreement, including the Disclosure Letter and in the Transaction Documents were true and correct in all material respects when made and are true and correct in all material respects on the Closing Date as though made on and as of the Closing Date, and Buyer has performed and complied in all material respects with all covenants and agreements required by the Purchase Agreement to be performed or complied with by it prior to the Closing.

2.      No documents of Buyer affecting its Articles of Incorporation have been filed with the State Department of Assessments and Taxation of the State of Maryland since _____, 20__.

3.      Each of the officers of the Buyer named below is a duly elected incumbent in the office indicated for such person, and the signature set forth opposite such person's name is the authentic signature of such person:

| Name | Title | Signature |
|------|-------|-----------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Capitalized terms not defined herein shall have the meanings ascribed thereto in the Purchase Agreement.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of [_____], 2016.

By: _____
Name: _____
Title: _____

- 34 -

**EXHIBIT 1**

EXHIBIT E

### MOTION TO APPROVE SALE

**[To Come from Bankruptcy Counsel]**

**EXHIBIT 1**

EXHIBIT F

## SALE ORDER

**[To Come from Bankruptcy Counsel]**

**EXHIBIT 1**

EXHIBIT G

**BID PROCEDURES ORDER**