IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| GLOBAL EMERGENCY | ) | CASE NO. 16-10908-SDB |
| RESOURCES, LLC, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

### DEBTOR'S MOTION FOR AN ORDER (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES; (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Global Emergency Resources (the "Debtor") files this motion (the "Motion") pursuant to sections 105(a), 363(b) &(f), and 365(a),(b),(f)&(k) of Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*, the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order (A) ESTABLISHING BIDDING AND AUCTION PROCEDURES; (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, AND (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES  In support of this Motion, the Debtor respectfully shows the Court as follows:

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (M), (N) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§1404 and 1409.

2. On July 6, 2016, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

3. The Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. As of the date of this filing, no official committee of unsecured creditors has been appointed, and no request has been made for the appointment of a trustee or examiner.

5. The Debtor specializes in software development and systems integration to create a Common Operating Picture and Situational Awareness for critical disease surveillance, patient and asset tracking during emergency and daily operations. For over ten (10) years, GER has successfully integrated systems for a wide variety of healthcare markets at the local, state, regional and national levels. From the initial planning stages through development, installation, training, exercises and drills, GER provides true systems integration and implementation for its First Responder, Fire and EMS Customers. GER is focused upon developing applications that bridge the communication gaps existing between Fire/EMS/Public Health and other Medical providers at the local, state and federal level.

6. Prior to the Petition Date, Pro-Sphere Tek, Inc. ("Pro-Sphere") loaned $115,000.00 to the Debtor to provide needed working capital. The Debtor executed a Secured Promissory Note and related documents needed to secure the Debtor's obligations under the Secured Promissory Note with a lien against all assets of the Debtor. The balance owed on the Secured Promissory Note as of the Petition Date totaled approximately $115,080.00.

7.  In addition to the Pro-Sphere Debt, the Debtor's pre-petition secured debt consists of:

| Creditor | Collateral | Est. FMV of Collateral/Lien |
|---|---|---|
| Action Capital Corporation/ CT Corp Systems | Residual Balance of Assigned Contract No. CW39125 | $66,000.00 |
| Security Federal Bank | Itemized Furniture and Office Equipment | $75,000.00 |

Although the Debtor has not yet filed its schedules, it anticipates scheduling approximately $143,000.00 in priority unsecured claims and over $595,600.00 in undisputed, nonpriority, non-insider unsecured (or under-secured) claims.

8.  While the Debtor provides high quality products and services that are needed by its customers, the Debtor suffers periodic cash flow issues, largely resulting from the cyclical delays in collecting from government clients that operate on fiscal year budgets that do not always prioritize payments consistent with the clients' need for emergency products and services. In contrast, the Debtor's expenses for maintaining the products and services provided to these clients are largely fixed and must be paid monthly.

9.  The Debtor filed this Chapter 11 case to preserve the Debtor's business as a going concern, to preserve the continuity of products and services to its clients, and to preserve the value of assets for some recovery to unsecured creditors after paying secured claims.

10. In an effort to avoid liquidation, the Debtor's management developed a three-part strategy: (a) seek immediate debtor-in-possession financing; (b) implement other cost-cutting measures; and (c) seek to consummate, as promptly as practicable, § 363 sale of the Debtor's assets to a financially capable buyer willing and able to infuse the new capital necessary to keep the business running.

11. The Debtor was unable to obtain debtor-in-possession financing from a third-

party commercial lender. However, Pro-Sphere agreed to provide a short-term post-petition financing facility to enable the Debtor to continue to operate its business and to preserve its value until it is able to complete a sale under § 363 of the Bankruptcy Code. The Debtor has requested and obtained an interim order approving this DIP financing. However, the DIP financing provides only temporary funding to allow for a §363 asset sale without undue delay.

## I. SALE OF ASSETS

12. The Debtor believes that the sale of its assets under § 363 of the Bankruptcy Code will best serve all parties-in-interest. The Debtor does not have the ability to operate for the amount of time that it would take to propose and seek confirmation of a plan of reorganization. A going concern sale to a financially stable buyer will enable the Debtor's business to continue to operate and will maximize the value of the estate. An expeditious sale represents the only means of avoiding a piecemeal liquidation.

13. The Debtor and Pro-Sphere have executed an Asset Purchase Agreement for the Debtor to sell to the Pro-Sphere substantially all of the Debtor's assets (excluding certain assets such as causes of action arising under or related to "Chapter 5" of Title 11 of the United States Code). A true and accurate a copy of the Asset Purchase Agreement is attached hereto as Exhibit "A" (the "Agreement").

14. The Agreement establishes Pro-Sphere as a "Stalking Horse Bidder" for a total sales price of $500,000.00, with the sales price to be paid in full on or before the sale is consummated. In exchange for that payment, Pro-Sphere will received the specified assets free and clear of any claims, liens and interests pursuant to 11 U.S.C. §363.

15. The Agreement also acknowledges that the Debtor will request that the Court establish procedures to expose the assets to a public auction with defined bidding procedures

(described below) to ensure that the Debtor's Estate realizes the maximum value for the Purchased Assets. The Debtor requests that the Court include in its order approving the §363 sale of assets the following provisions:

(i) Any third party that is interested in acquiring the assets identified in the Agreement ("Purchased Assets") must submit an "Initial Overbid" no later than 5:00 p.m. local time in Augusta, Georgia by August 15, 2016 (the "Overbid Deadline"). Any such Initial Overbid must comply with the following requirements ("Competing Bid Requirements"):

    A. Include a signed asset purchase agreement with terms substantially similar to the Agreement to acquire substantially all of the Purchased Assets that provides for a cash purchase price payable in lump sum at the closing of such transactions in an amount equal to or greater than $575,000.00 (without any financing contingency);

    B. Include a deposit in an amount equal to $75,000.00 in immediately available funds, which deposit shall be held in escrow by Debtor's counsel or its designee and shall be applied to the purchase price at closing if such Competing Bid is the Prevailing Bid (as hereinafter defined) and shall otherwise be refunded to the bidder unless such bidder is the Prevailing Bidder (as hereinafter defined) but subsequently fails to close under its proposed purchase agreement, other than because of a breach by Debtor or failure to occur of a closing condition specified in such purchase agreement, in which case the deposit shall be retained by Debtor as damages, without prejudice to Debtor's right to seek any additional damages to which it may be entitled.

    C. Shall not include any closing conditions other than those set forth in the Agreement.

    D. Shall be accompanied by sufficient evidence to satisfy Debtor that the over-bidder is authorized, capable, qualified and financially able to perform its obligations under such asset purchase agreement in the event it submits the Successful Bid (as defined below);

    E. Include an executed "Certification of Good Faith Negotiations" attached hereto as Exhibit "B." and

    F. Shall be submitted to Debtor, c/o Todd Boudreaux, counsel for Seller, 493 Fury's Ferry Rd, Augusta, GA 30907 (facsimile (706) 869-3143), to Pro-Sphere, c/o Daniel H. DuVal, counsel for Pro-Sphere, Cohen Mohr, LLP, 1055 Thomas Jefferson Street, NW, Suite 504, Washington, DC 20007

        (facsimile (202)342-6147), and to the United States Trustee, Johnson Square Business Center, 2 East Bryan Street, Suite 725, Savannah, GA 31401 (facsimile (912) 652-4123) prior to the Overbid Deadline.

(ii) In the event Debtor receives a timely conforming Initial Overbid, Debtor shall conduct an auction with respect to the sale of Debtor's assets on August 19, 2016 beginning at 9:00 a.m. at the offices The Boudreaux Law Firm, 493 Fury's Ferry Rd, Augusta, GA 30907, or at such other location as may be designated by Seller (the "Auction"). To participate in the Auction, each prospective purchaser shall have complied with the Bidding Procedures in all respects, including submitting a qualifying Initial Overbid. At the Auction, the lowest bid by a prospective purchaser must exceed Initial Overbid by $10,000.00. Subsequent bids shall be in increments of at least $1,000.00 greater than the prior bid for the purchase of Seller's assets until there is only one (1) offer that Debtor determines is the highest and best offer for Debtor's assets (the "Successful Bid"). All successive bids, including the Successful Bid, must satisfy all requirements of clauses (i) above in all respects. All bidding for Debtor's assets will be concluded at the Auction and there will be no subsequent bidding.

(iii) After the conclusion of the Auction, Debtor shall submit an order approving the Successful Bid for entry by the Court, in such form as approved by the Successful Bidder, including in that order a provision to stipulate the payment to Pro-Sphere of the amounts contemplated by clause (v) below as a condition to the closing thereof (the "Sale Order"), without further notice or hearing. Following approval of the Sale Order, Debtor will be authorized and directed to take all commercially reasonable and necessary steps to consummate the transaction contemplated by the Successful Bid Agreement. In the event that a Successful Bid is selected as a result of the Auction and Debtor and such bidder (the "Successful Bidder") enter into an asset purchase agreement with respect thereto (which must conform to the parameters of clause (i) above) (the "Successful Bid Agreement"), the Agreement shall remain in full force and effect (unless terminated in accordance with its terms), provided, however, that Pro-Sphere has agreed that it shall not pursue any of its rights under the Agreement until such time as the Successful Bid Agreement has been terminated; provided, further, that, notwithstanding the foregoing, nothing in this paragraph shall affect, modify or otherwise limit Pro-Sphere's rights pursuant to clause (v) below and the collection thereof (which shall expressly survive the termination of the Agreement) or its right to terminate the Agreement in accordance with its terms.

(iv) If no conforming Initial Overbid is received prior to the Overbid Deadline, (A) the Auction will not be held, (B) Pro-Sphere shall be deemed to be the Successful Bidder, (C) Debtor shall submit a Sale Order for entry by the Court, in such form as approved by Pro-Sphere, without further notice or hearing, and (D) following approval of the Sale Order, in such form as is acceptable to Pro-Sphere, the purchase and sale of the Purchased Assets shall be consummated on the terms and

        conditions set forth in the Agreement.

(v)     At the closing of the sale of the assets of Seller to the Successful Bidder (other than Pro-Sphere), Pro-Sphere shall be paid its termination fee out of the sale proceeds (the "Initial Pro-Sphere Payment") via wire transfer pursuant to instructions to be provided by Pro-Sphere.

(vi)     In the event that a Successful Bid was identified at the Auction but the Successful Bid Agreement is terminated prior to the consummation of transactions contemplated thereby for any reason, Seller and Pro-Sphere shall consummate the purchase and sale of the Purchased Assets in accordance with the terms of the Agreement (unless earlier terminated in accordance with the terms thereof).

(vii)     As part of any bid that it makes prior to or at the Auction, Pro-Sphere shall be entitled, at its sole discretion, to "credit bid" either or both of (i) the amount of any prepetition secured claim held by Pro-Sphere; or (ii) the amount of any outstanding indebtedness pursuant to debtor-in-possession financing provided to Debtor by Pro-Sphere (the "Credit Bid Right").

(viii)     Debtor shall file a Report of Sale with the Court within fifteen (15) days following the date on which the transactions contemplated by the Successful Bid Agreement are consummated, as applicable.

(ix)     The Bid and Auction Procedures shall survive conversion or dismissal of Debtor's bankruptcy case or confirmation of a plan of reorganization, and Pro-Sphere's rights under these Bid and Auction Procedures shall not be modified by any confirmed plan. The Bid and Auction Procedures shall be binding upon any successor to Debtor, including any trustee appointed for Debtor or its bankruptcy estate.

16.     The Debtor and Pro-Sphere executed the Agreement after extensive arms' length negotiations. Pro-Sphere is not an insider of the Debtor and has no business dealings or connections with the Debtor other described in the Certification of Good Faith Negotiations.

17.     The Debtor has proposed the sale of its assets after thorough consideration of all available alternatives and has concluded that the sale is the only viable option. Given the Debtor's financial condition as described above, a prompt sale is appropriate under Section 363 of the Bankruptcy Code. *See*, e.g., *Tempo Technology*, 202 B.R. at 369-70 (approving a sale of

all of the debtor's assets, within a month after the petition date, where the debtor faced a cash shortfall, operated in an industry where there were few potential purchasers, and anticipated continuing losses and a decline in value of the bankruptcy estates); *Delaware & Hudson Railway*, 124 B.R. at 177 (affirming the bankruptcy court's approval of a sale of substantially all of the debtor's assets where the debtor would have been "in liquidation mode if required to delay a sale until after filing a disclosure statement and obtaining approval for a reorganization plan"); *Titusville Country Club*, 128 B.R. at 400 (granting an expedited hearing on a motion to approve a sale as a result of "deterioration" of the debtor's assets); In re Coastal Industries, Inc., 63 B.R. 361, 366–69 (Bankr. N.D. Ohio 1986) (approving an expedited sale pursuant to Section 363(b) just five weeks after the petition date where the debtor was suffering operating losses).

18. The Debtor has reached the conclusion that a prompt asset sale is necessary based upon consideration of many factors, including very modest cash reserves, accumulation of unpaid trade debt, inability to obtain new equity or debt financing, and need for prompt cash infusions to support the business plan and avoid liquidation. The Debtor has concluded, in the exercise of its business judgment, that a prompt asset sale to a financially capable buyer represents the best (and only) route to preserve the going concern value for the benefit of creditors of the Debtor's Chapter 11 estate.

19. A going concern asset sale will preserve jobs that would otherwise be lost and will pay creditors more than they would receive if the Debtor were liquidated. In addition, the Debtor's vendors and customers will continue to do business with the Debtor in anticipation of maintaining the continuity of this business. If the sale is not completed, the vendors, customers, and the Debtor would suffer irreparable harm, providing abundant business justification to sell the Debtor's assets to Pro-Sphere or to the highest bidder at an auction.

20.     The Debtor believes that its marketing efforts have yielded (in the offer submitted by Pro-Sphere) a fair value for the estate's assets. As further assurance that the estate will receive fair value, Pro-Sphere offer will be tested through a public auction consistent with the requirements of the Bankruptcy Code.

21.     In addition to the asset purchase price, Pro-Sphere has agreed to assume numerous leases and contracts of the Debtor, as set forth in the Pro-Sphere Purchase Agreement. Such assumed liabilities will relieve the Debtor's estate of potentially substantial rejection claims and administrative claims. In addition, Pro-Sphere's offer contains no material contingencies (including, without limitation, no contingencies for financing, due diligence or internal approvals), and Prepetition Lender has demonstrated a willingness and ability to close the sale of the Debtor's assets as provided in the Agreement.

22.     Under §363(f), Debtor's sale of its assets free and clear of all liens, claims, rights, interests, and encumbrances as in the Agreement, except with respect to such Interests that are assumed pursuant to the Agreement. *See, In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). Each assumed liability satisfies at least one of the five conditions of and will be adequately protected by either being paid in full at the time of closing, or by having any interest attach to the net proceeds of the sale, subject to any claims and defenses the Debtor may possess with respect thereto.

23.     The Debtors have conducted a UCC search of purported lienholders of the Debtors' assets. The results of such UCC search were examined and the addresses of alleged lienholders in the Debtor's assets compiled for notice purposes. The Debtors will serve notice of this Motion upon all purported lienholders. All purported liens will survive the sale of the

Debtor's assets to Pro-Sphere to the extent they were enforceable on the Petition Date (subject to any applicable defenses), and will attach to the sale proceeds.

## II. ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

24. As required by the Agreement, and in order to enhance the value to the Debtor of its assets (by curtailing further administrative liability to the estates and to eliminate substantial rejection claims), the Debtor requests approval, under 11 U.S.C. § 365, of the assumption and assignment of the Assigned Contract and Leases (as described in the Agreement) to Pro-Sphere or, alternatively, to the highest bidder at the Auction. The Debtor further requests that the Order approving such sale provide that the Assigned Contracts and Leases will be transferred to, and remain in full force and effect for the benefit of, Pro-Sphere (or other successful bidder) notwithstanding any provisions in the Assigned Contracts and Leases. The Assigned Contracts and Leases are identified in Attachments 1 and 2 to the Agreement.

25. Section 365(f) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

26. Although Section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor in possession's decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co.*, 318 U.S. 523, 550, 6 S. Ct. 727, 89 L. Ed. 959 (1943); *Matter of Tilco, Inc.*, 558 F.2d 169 (10th Cir. 1977). A debtor satisfies the "business judgment" test when it determines, in good faith, that

assumption of an executory contract will benefit the estate and the unsecured creditors. *In re FCX, Inc.*, 60 B.R. 405, 411 (E.D. N.C. 1986). The assumption and assignment of the Assigned Contracts and Leases set forth in the Prepetition Lender Purchase Agreement is a necessary part of the deal that the Debtor has struck with Prepetition Lender, and is in the parties' mutual interest.

27. The Debtor has served a copy of this Motion to all counterparties to the Assigned Contracts and Leases, notifying such counterparties of the potential assumption by the Debtor and assignment to Pro-Sphere (or to the highest bidder at the Auction). The parties to the contracts are identified as follows:

| **Party to Executory Contract** | **Contract Information** | **Action(s) to Cure Default** |
|---|---|---|
| Advocate Sherman - Illinois Region IX | 15GER0506-1 | None |
| Community Health Center Association of CT (CHCACT) | CHCACT Contract dated 21 March 16 | None |
| Community Healthcare Assoc of NY State (CHCANYS) | GER2015-PO | None |
| FEMA Center for Domestic Preparedness (CDP) | HSFE20-16-P-0005 | None |
| FEMA Center for Domestic Preparedness (CDP) | P010177336 | None |
| Georgia Bureau of Investigation | 47100-334-0000049316 | None |
| Georgia Hospital Association | 40500-034-09090715 | None |
| Los Angeles Department of Public Health | PO-PH-16324141-1 | None |
| Northern Virginia Emergency Response System (NVERS) | PO# 16GER0229-1 | None |
| Northern Virginia Emergency Response System (NVERS) | NVHA-01082013_FY12 | None |
| Northern Virginia Emergency Response System (NVERS) | PO# 16GER0229-1 | None |

| | | |
|---|---|---|
| Northern Virginia Emergency Response System (NVERS) | PO# 15GER0331-1 | None |
| Northern Virginia Emergency Response System (NVERS) | PO# 15GER0331-1 | None |
| Northern Virginia Emergency Response System (NVERS) | PO# 15GER0331-1 | None |
| Northern Virginia Emergency Response System (NVERS) | PO# 15GER0331-1 | None |
| Northern Virginia Emergency Response System (NVERS) | NVHA-01082013_FY12 | None |
| Northern Virginia Emergency Response System (NVERS) | NVHA-01082013_FY12 | None |
| Northern Virginia Emergency Response System (NVERS) | NVHA-01082013_FY12 | None |
| Radiation Injury Treatment Network (RITN) | 212720 | None |
| US Department of Justice (ESF #13) | DJA-15-AHDQ-G-0966 | None |
| Washington DC Department of Health | CW23547 Mod 009 / PO543342 | None |
| Washington DC Department of Health | CW23547 Mod 009 / PO543342 | None |

28. Counterparties to the Assigned Contracts and Leases are provided an opportunity to object to the proposed assumption and assignment. To the extent no objection is asserted prior to the hearing on this motion, any objection is waived.

29. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See, In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D. N.J. 1988) (rejected by, *In re Worths Stores Corp.*, 130 B.R. 531 (Bankr. E.D. Mo. 1991)). *See also, In re Natco Industries, Inc.*, 54 B.R. 436, 440 (Bankr. S.D. N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Restaurant and Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). In the event of a timely objection, Pro-Sphere is prepared to show at the sale hearing that it is adequately capitalized to perform its obligations under the Agreement and under the Assigned Contracts and Lease. Moreover, any qualified overbid must include evidence that the bidder provides adequate assurance of future performance with respect to the Assigned Contracts and Leases. Consequently, assumption and assignment of the Assigned Contracts and Leases is appropriate under the circumstances.

30. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

31. While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a purchaser act in good faith. ... speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

The Agreement is a fair transaction in which Pro-Sphere has, at all times, acted in good faith

under the *Abbotts Dairy* standards. The Debtor requests that the court make a finding that Pro-Sphere has purchased the assets at issue and has taken by assignment the specified executory contracts and unexpired leases in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

32. If this Motion is granted, the Debtor will promptly serve the Order upon all parties-in-interest. The Order will describe the terms and conditions of the proposed sale. *See, In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 180 (D. Del. 1991) (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648 (S.D. N.Y. 1995).

33. Rule 6004(d) and Rule 6006(h) provides that unless the Court orders otherwise, an order approving the assumption and assignment of leases and/or approving a sale of property free and clear of liens is stayed for fourteen days. Based upon the exigent circumstances outlined in this motion, the Debtor requests that the Court orders that the provisions of Rules 6004 & 6006 will not stay the effectiveness of the Order.

34. The Debtor will provide notice of the hearing on the Motion and begin the auction and proposed sale process by mailing a copy of the Order to (i) any party that expressed serious interest in acquiring all or a substantial portion of the Purchased Assets; (ii) all parties set forth on the master mailing matrix provided by the Court (including all individuals and entities holding an equity stake in the Debtor; and (iii) all parties known by the Debtor to assert a lien or security interest in or against the Purchased Assets.

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the proposed sale process, authorizing the Debtor to take all action reasonably necessary to

WHEREFORE, the Debtor respectfully requests that the Court enter an order :

a. approving the proposed sale process;

b. authorizing the Debtor to take all action reasonably necessary to consummate the proposed sale process;

c. authorizing the Debtor to sell its assets free and clear of all liens pursuant to 11 U.S.C. §363;

d. approving the Debtor's assumption of the executory contracts identified in the Motion;

e. approving the assignment of the executory contracts identified in the Motion; and

f. granting such other and further relief as is just and proper.

Respectfully submitted this____ day of July, 2016.

/TODD BOUDREAUX
Attorney for Debtor
Georgia State Bar No. 070023

BOUDREAUX LAW FIRM
493 Fury's Ferry Rd
Augusta, GA 30907
(706)869-1334