**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 3:45 pm, Dec 21, 2016

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 11 Case |
| ) | Number <u>16-10908</u> |
| GLOBAL EMERGENCY RESOURCES, LLC ) | |
| ) | |
| Debtor ) | |
| _____) | |

## OPINION AND ORDER

Before the Court is the United States Trustee's ("UST") Motion to Convert Case to a chapter 7 case pursuant to 11 U.S.C. §1112(b)(4)(A), (E) and (I). At the hearing and in its post-hearing brief, Global Emergency Resources, LLC ("Debtor") opposed the motion arguing the UST failed to carry its burden of establishing cause exists to convert this case and failed to show that conversion is in the best interest of the creditors and the bankruptcy estate. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O) and the Court has jurisdiction under 28 U.S.C. §1334. For the following reasons, the UST's Motion to Convert is granted.

### FINDINGS OF FACT[1]

Debtor filed a chapter 11 bankruptcy petition on July 6, 2016. Debtor's initial schedules listed assets with a value of

---

[1] At the hearing on the UST's motion to convert, the parties stipulated to the facts asserted by counsel through a proffer.

$880,144.05 and liabilities of $4,748,142.93. Dckt. No. 1. Debtor's latest amended schedules reflect values of $489,357.84 in assets and $4,763,617.93 in liabilities. Dckt. Nos. 44 and 70.

On July 20, 2016, Debtor filed a motion to sell substantially all of Debtor's assets pursuant to 11 U.S.C. §363. Dckt. No. 29. After hearings and a competitive auction process, the Court entered an order approving the sale to Pro-Sphere Tek, Inc. ("Pro-Sphere") for $1,600,000.00. Dckt. No. 96. The purchase price is to be paid as follows:

> total of seven hundred twenty-seven thousand dollars ($727,000.00) at the closing of the sale, satisfied by a credit bid for the balance owed by the Debtor to Pro-Sphere as of the date of closing (totaling approximately $402,000.00[]), $125,000.00 paid to the escrow account of counsel for Action Capital to satisfy Action Capital's secured, first-priority security interest in certain property of the Debtor that is not subject to any claims, diminution or surcharge of any kind whatsoever, and the balance of the initial purchase price payment (approximately $200,000.00)[paid] to the Debtor-in-Possession;
>
> $873,000.000 [paid] in thirty-six (36) equal monthly installments of $24,250.00 to be received by the [D]ebtor on or before the fifteenth day of each month beginning on January 15, 2017 and continuing each month thereafter until the balance of the sales price is paid in full.
>
> ORDERED, that all payments to the Debtor shall be held by the Debtor until disbursement is authorized by the Bankruptcy Code and/or by

2

further order of the Court[.]

Dckt. No. 96.

The sale closed on September 1, 2016 and on September 2, 2016 $197,151.70 was wired to the Debtor's bank account ("DIP Account"). Dckt. Nos. 110 and 136, p. 49. Security Federal holds an undisputed lien on its cash collateral in Debtor's DIP Account. After the closing, without approval from the Court or Security Federal, Debtor expended $115,407.00 from the DIP Account on business expenses. Dckt. No. 136, p. 11. On September 30, 2016, the DIP Account balance was $82,908.30. Dckt. No. 136. On October 24, 2016, again without the approval of the Court or Security Federal, Debtor paid $4,875.00 to the UST for quarterly fees, leaving an approximate balance in the DIP Account of $78,033.30 as of the hearing date. Dckt. No. 137, Ex. B.

Security Federal is Debtor's only remaining secured creditor. After Security Federal was made aware of Debtor's expenditure of these funds, Security Federal and Debtor reached an oral agreement valuing Security Federal's cash collateral at $75,000.00. In addition, Debtor owes at least $37,478.62 in attorney fees which constitutes a chapter 11 administrative claim. Dckt. No. 143. Debtor also owes approximately $20,000.00 in post-petition withholding taxes which constitute a priority claim paid

3

before general unsecured creditors.

At the hearing, Debtor, Security Federal and Mr. Holland, opposed conversion to chapter 7. Mr. Holland is an unsecured non-insider creditor of Debtor holding a claim of approximately $100,000.00. Conversely, Dr. Richards and VetFed Resources, Inc. ("VetFed") are Debtor's largest unsecured creditors[2] and they both supported the UST's motion to convert. Dr. Richards and VetFed are insiders of the Debtor.

At the hearing, Debtor's counsel indicated there may be some spite in Dr. Richards's and VetFed's support of the UST's motion to convert. Dckt. No. 151, pp. 35-36. The UST and counsel for Dr. Richards and VetFed confirmed dissension or "bad blood" exists among Debtor's Board of Directors and stated that the Board of Directors purportedly voted in September 2016 to remove Mr. Stan J. Kuzia, Jr. from his position as Debtor's chief executive officer and chairman of the Board of Directors. Dckt. No. 151, pp. 44-45. Purportedly they also have voted to remove him from the Board. Dckt. No. 151, pp. 44-45; Dckt. No. 150, p. 6; Dckt. No. 148; Dckt. No. 153; Dckt. No. 154, Ex. A. Subsequent to the hearing, Mr. Kuzia

---

[2] Dr. Richards has filed a claim for approximately $1.1 million dollars; and VetFed has filed a claim for approximately $2.2 million dollars. Combined, Dr. Richards and VetFed hold approximately 79% of all general unsecured debt; and approximately 67% of Debtor's total scheduled debts.

4

filed a pro se pleading disputing the legitimacy of the purported Board of Directors meeting and actions taken, including the validity of his removal. Dckt. No. 153. Also after the hearing, Debtor's initial counsel filed a motion to withdraw attaching a letter written to Debtor stating "there appears to exist a disagreement about the authority of the Board of Directors and the validity of the Board restructuring to which your email alluded . . . [B]ecause of the circumstances as they exist, I cannot continue representing the Debtor in the Chapter 11 Case and must therefore withdraw from this case."[3] Dckt. No. 154, Ex. A.

Debtor also timely filed a motion to extend the exclusivity period for Debtor to propose a chapter 11 plan. This motion was filed on the day the period was scheduled to expire, November 3, 2016.

### CONCLUSIONS OF LAW

The Court on request of a party in interest and after notice and hearing shall for "cause" convert or dismiss a case, whichever is in the best interest of creditors and the estate, unless the Court determines that the appointment of a trustee is in

---

[3] For the reasons discussed herein, the Court need not reach the legitimacy of the Board of Directors' actions, but the pleading underscores the conclusion that there is an existing dispute among Debtor's management.

5

the best interest of creditors and the estate. 11 U.S.C. §1112(b)(1). As the movant, the UST bears the initial burden of proof to show cause for conversion exists by a preponderance of the evidence. <u>Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings, L.L.C. (In re Vallambrosa Holdings, L.L.C.)</u>, 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009). Once cause is shown to exist the Court shall dismiss or convert unless Debtor shows "unusual circumstances" exist and Debtor establishes a reasonable likelihood a plan will be confirmed within a reasonable period of time and grounds for dismissal are acts or omissions that may be cured in a reasonable period of time. 11 U.S.C. §1112(b)(1)-(2). Specifically, 11 U.S.C. §1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter <u>if the court finds and specifically identifies unusual circumstances</u> establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
> > (i) for which there exists a reasonable

6

> justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. §1112(b)(2)(emphasis added).

The Bankruptcy Code provides a non-exclusive list of sixteen examples of cause to dismiss or convert a chapter 11 case. See 11 U.S.C. §1112(b)(4); In re Gillikin, 2011 WL 7268050, at *3 (Bankr. S.D. Ga. Nov. 21, 2011)("'Cause' is a broad and flexible term in the Code and is illustrated by the non-exhaustive list of examples provided in section 1112(b)(4)."); In re Star Broad., Inc., 336 B.R. 825, 830 (Bankr. N.D. Fla. 2006)("The list is not exhaustive and the Eleventh Circuit has held that 'a debtor's lack of 'good faith' may constitute cause for dismissal of a petition.'"). The UST asserts cause to convert or dismiss exists under 11 U.S.C. §1112(b)(4)(A), (E) and (I) which respectively provide:

> (4) For purposes of this subsection, the term "cause" includes—
>
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> .
> .
> .
>
> (E) failure to comply with an order of the

7

>       court;
>
>       . . .
>
>       (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief[.]

11 U.S.C. §1112(b)(4)(A), (E) and (I).

First, the UST asserts cause exists under §1112(b)(4)(A) due to a purported substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A). "This is a two-fold inquiry. First, this Court must determine whether there has been substantial or continuing loss to or diminution of the estate. Second, if the Court finds that there is, then this Court must determine whether there is an absence of a reasonable likelihood of rehabilitation." In re Vallambrosa Holdings, L.L.C., 419 B.R. at 88.

The UST argues several facts show a continuing loss or diminution of the estate. There are insufficient funds in Debtor's DIP Account[4] to pay: Security Federal its $75,000.00 of cash collateral lien; the taxing authority the $20,000.00 post-petition

---

[4] As of the hearing, the current balance of the DIP Account was approximately $78,000.00.

8

withholding tax claim; and Debtor's attorney's administrative expense claim of approximately $38,000.00. The UST further contends Debtor is not operating a business or generating revenue because it has sold substantially all of its assets and its only revenue stream is from the note. The UST also points out that at the time Debtor withdrew money from the DIP Account, Security Federal had not authorized the activity or established the extent of its lien. Furthermore, as of the hearing there was no agreement between Security Federal and Debtor on the use of cash collateral under these facts where the payables exceed the $75,000.00 cash collateral lien.[5] Given these facts, the UST contends there is a substantial and continuing loss to the estate. Next, the UST contends there is not a reasonable likelihood of rehabilitation because Debtor is no longer operating a business. See In re Vallambrosa Holdings, L.L.C., 419 B.R. at 89 (defining "rehabilitation" within the meaning of 11 U.S.C. §1112(b)(4)(A)).

    The UST also asserts cause exists to convert the case pursuant to §1112(b)(4)(E). Section 1112(b)(4)(E) provides, "[f]or purposes of this subsection, the term 'cause' includes . . . failure to comply with an order of the court." 11 U.S.C. §1112(b)(4)(E).

---

[5] The $75,000.00 cash collateral lien, the $20,000.00 tax claim and the $38,000.00 attorney fee claim exceed the DIP Account balance.

9

This Court's previous order required "all payments to the Debtor shall be held by the Debtor until disbursement is authorized by the Bankruptcy Code and/or by further order of the Court." Dckt. No. 96. The UST argues Debtor violated the order by expending over $115,000.00 from the DIP Account without prior authorization by the Bankruptcy Code or order of the Court.

Finally, the UST argues cause exists to convert the case under §1112(b)(4)(I) which provides "[f]or purposes of this subsection, the term 'cause' includes . . . failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." 11 U.S.C. §1112(b)(4)(I). Debtor acknowledges it failed to timely pay $20,000.00 in post-petition withholding taxes. Based upon these facts, the UST contends cause exists to convert or dismiss the case pursuant to 11 U.S.C. §1112(b)(4)(A), (E) and (I).

Conversely, Debtor asserts the UST failed to carry his burden of proof to show cause exists to convert Debtor's case. Debtor further contends that remaining in chapter 11 is in the best interest of its creditors and the estate. Debtor argues the UST's analysis of diminution of the estate does not address the fact that the ultimate sales price for the assets exceeded $1.6 million rather than the Debtor's initial valuation of $489,358.00. Dckt. No. 70.

10

Additionally, Debtor contends the UST's diminution analysis also fails to take into account the $24,250.00/month income stream Debtor expects to receive for 36 months commencing January 2017. Nor does the UST's diminution analysis consider Debtor's retention of a security interest in the assets should Pro-Sphere default in its payments.

Debtor further argues any non-compliance with this Court's order was only a technical violation and the money was used for Debtor's legitimate business expenses in accordance with the Bankruptcy Code. Debtor also asserts both Security Federal and Mr. Holland (the only non-insider creditors appearing at the hearing) oppose conversion of the case to a chapter 7 case.

At the hearing, Security Federal informed the Court that at the time Debtor used its cash collateral such use was not authorized by Security Federal, however, after Security Federal learned of the usage it did not oppose such use, provided its $75,000.00 was protected. Dckt. No. 151, pp. 39-40. With the commencement of the note payments in January 2017, Debtor and Security Federal anticipate there will be sufficient assets to cover Security Federal's claim. Notwithstanding the foregoing, with the

11

additional facts disclosed at the hearing[6], Security Federal's counsel said he was not authorized to enter into an agreement on Debtor's use of the cash collateral, but, he was confident the parties would be able to reach an agreement. Dckt. No. 151, pp. 40-41.

Debtor acknowledges it did not timely pay approximately $20,000.00 in post-petition taxes, but argues this will be promptly cured once it receives the payments under the note. Debtor further contends the non-payment was reasonably justified because Debtor's post-petition financing agreement severely limited Debtor's expenditure of funds.

Finally, Debtor contends a chapter 11 will be less expensive and in the best interest of creditors and the estate because in a chapter 11 debtor could propose a plan to classify and treat insider's unsecured claims separately from general unsecured claims and a chapter 11 would allow Debtor to start distributing payments to creditors quicker than disbursements in a chapter 7. Debtor also contends the fees incurred by the Debtor in a chapter 11 would most likely be less than in a chapter 7. For these reasons, Debtor argues the case should not be converted.

---

[6] That the total of Security Federal's $75,000.00 cash collateral lien, the $20,000.00 tax obligation and the outstanding attorney's fees exceed the current DIP Account balance.

Upon considering the totality of the circumstances, the Court finds the UST has met its burden of proof of establishing that cause to convert this case to a chapter 7 case and that conversion is in the best interest of creditors and the bankruptcy estate.[7] First, the UST has established cause to convert or dismiss this case under §1112(b)(4)(E) and (I). Debtor did not comply with this Court's order or the Bankruptcy Code before making distributions. Debtor argues no harm occurred because Security Federal now knows about the expenditures and does not oppose those payments. However, this does not change the fact that Debtor's initial expenditure failed to comply with the Court order and the Code. See generally 11 U.S.C. §363(c). In addition, Debtor clearly has not timely paid approximately $20,000.00 in post-petition withholding taxes. Pro-Sphere's tight financing restrictions were known to all parties especially the Debtor and this does not change the fact that Debtor

---

[7] To the extent necessary, the Court finds compelling circumstances exist to waive the time constraints set forth in 11 U.S.C. §1112(b)(3). First, the UST, as a successful movant, would not oppose the timing. Second, the legal issues presented, briefing schedule and delivery of the transcript necessitated an extended period and constitute compelling circumstances to therefore extend this time period. See In re W. Liberty Holdings, LLC, 2009 WL 1522047, at *1 n.2 (Bankr. N.D.W. Va. May 29, 2009)(finding compelling circumstances where matter was taken under advisement and press of judicial business required extension); In re Crossroads, 453 B.R. 764, 770 (Bankr. D. Neb. 2011)(needed to conduct legal research on matter); In re DCNC N. Carolina I, LLC, 407 B.R. 651, 654 n.5 (Bankr. E.D. Pa. 2009)(matter needed comprehensive review).

failed to timely pay these taxes. Under these two factors alone, the UST has shown cause exists to convert this case to a chapter 7 case. See 11 U.S.C. §1112(b)(4)(E) and (I).

Once the UST has established cause, the burden shifts to the Debtor to identify "unusual circumstances" establishing that converting or dismissing the case is not in the best interests of creditors and the bankruptcy estate, and that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time. See 11 U.S.C. §1112(b)(2)(A). Debtor must also establish a reasonable justification for its failure to pay the withholding taxes and comply with this Court's order; and that these acts/omissions will be cured within a reasonable period of time fixed by the Court. See 11 U.S.C. §1112(b)(2)(B). In this case, Debtor has failed to show unusual circumstances establishing conversion or dismissal is not in the best interest of the creditors or the estate. While this is not a reorganization case, liquidation in a chapter 11 is not an "unusual circumstance."

There is discord among the Debtor's insiders and management. To date, no plan has been proposed and there is no business to reorganize and no employees remaining employed. Costly litigation is likely to ensue during the plan formation and confirmation process. At best, the process will merely be delayed

14

to resolve these authority issues. Even if a plan is ultimately proposed, it faces a delayed and costly formation and confirmation process. Many classes are impaired and obtaining confirmation over an objecting class or even within a class with objecting creditors would most likely be a costly process, if even possible. All while chapter 11 administrative costs will continue to accrue. Similar confirmation issues remain even if a third party proposes a plan. Given these circumstances, Debtor has not established that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time.[8]

      The issue then becomes what is in the best interest of the creditors and the estate. After considering the matter, the Court finds conversion of this case to a chapter 7 case is in the best interest of the creditors and the estate. Debtor has no business to reorganize or rehabilitate. This is not a typical liquidating plan with a §363 sale followed by disbursements and conversion; rather any plan of reorganization of the Debtor would be funded by the note payments over 36 months. Debtor maintains no business and no employees. In this particular case, given these facts and the ongoing disputes no chapter 11 purpose would be served by allowing

---

[8] Because Debtor has not met the requirements of §1112(b)(2)(A) the Court need not address §1112(b)(2)(B).

15

this case to continue as a chapter 11.[9] See generally In re Landmark Atlantic Hess Farm LLC, 448 B.R. 707 (Bankr. D. Md. 2011)(dismissing chapter 11 bankruptcy case where the debtor's only business activity was collecting a note); In re Madison City Dev. Co. Inc., 1996 WL 33404959, at *2 (Bankr. S.D. Ill. Dec. 13, 1996)(dismissing chapter 11 case where only assets were to receive payment on two land installment contracts and plan only sought to resolve ongoing dispute between insiders); In re Nikron, 27 B.R. 773 (Bankr. E.D. Mich. 1983)(sua sponte dismissing a chapter 11 where the plan would provide for the continued collection of an account receivable, the debtor's only asset).

---

[9] This is not to say such a plan of liquidation is per se prohibited in chapter 11. See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, n.2 (2008)("Although the central purpose of Chapter 11 is to facilitate reorganizations rather than liquidations (covered generally by Chapter 7), Chapter 11 expressly contemplates liquidations. See §1129(a)(11)(2000 ed.) ("Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan"); see also In re All Am. of Ashburn, Inc.,et al. 40 B.R. 104 (Bankr. N.D. Ga. 1984)(allowing a chapter 11 plan of liquidation of assets the debtor where a neutral chapter 11 trustee was already appointed and there would be needless duplicity of work if converted to chapter 7). However, in this case, Debtor's assets have been liquidated prior to the filing of the plan and there is no neutral trustee at the helm and there are ongoing disputes among the Board members. Under these facts and circumstances, the best interest of the creditors and estate would be best served through a chapter 7 case.

Other factors showing conversion is in the best interest of creditors and the estate include the dissension among Debtor's management which will likely increase the litigation costs and make the formulation of the plan and confirmation process questionable and certainly more costly and delayed. A neutral chapter 7 trustee is needed to collect the assets and make distributions according to the Bankruptcy Code. Chapter 7 will streamline the process and will avoid a costly and perilous confirmation process, avoid continued accrual of quarterly fees, and avoid any further Debtor's attorney fees being paid from the chapter 7 bankruptcy estate. See Lamie v. U.S. Tr., 540 U.S. 526, 538-39, 124 S.Ct. 1023, 1032 (2004) (Bankruptcy Code does not authorize compensation to debtor's attorney from estate funds in a chapter 7 unless the attorney is employed by the trustee and approved by the court). A chapter 7 trustee will be motivated to pursue any appropriate objections to claims and pursue appropriate turnover actions. These objections may include objections and motions to subrogate insiders' claims. 11 U.S.C. §510(c); In re MMH Auto. Group, LLC, 400 B.R. 885 (Bankr. S.D. Fla. 2008)(chapter 7 trustee filed motion to subordinate untimely claim of insider); In re First NLC Fin. Servs., LLC, 396 B.R. 562 (Bankr. S.D. Fla. 2008)(chapter 7 trustee brought complaint against lenders asserting lenders should be treated as equity

17

security holders and their claims subordinated to all other claims in the bankruptcy). Furthermore, other parties in interest may be involved in the chapter 7 process and may pursue their interests in accordance with the Code. Finally, there is no requirement that a chapter 7 trustee wait until the end of the case before making disbursements to creditors. For these reasons based upon the record before the Court, a chapter 7 is in the best interests of creditors and the estate.[10]

It is therefore ORDERED that the UST's Motion to Convert is GRANTED. This bankruptcy case is CONVERTED to one under Chapter 7 of the Bankruptcy Code. Debtor's Motion to Extend the Exclusivity period is deemed MOOT.

_/s/ Susan D. Barrett_
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 21st Day of December 2016.

---

[10] After the hearing, Mr. Kuzia filed a pro se motion noting the dissension among Debtor's management and requesting to be allowed to provide testimony about this issue. For purposes of this motion that request is denied as Debtor was represented by counsel at the hearing. Furthermore, as discussed herein, the parties are well aware of the dissension among the Debtor's members. To address the current motion the Court need not reach the merits of the validity of the actions including the purported removal of Mr. Kuzia.

18